CASE 65.—ACTION BY F. J. POLIVICK AGAINST W. M. HUS-
BANDS TO RECOVER LAND.—October 9, 1906.

# Husbands v. Polivick, &c.

Appeal from McCracken Circuit Court.

Judgment for plaintiffs, defendant appeals — Affirmed.

1. Taxation—Tax Deed—Action Against Claimant Under Deed—
Burden of Proof.—Though a tax collector is required to first
sell the personal property of the taxpayer, and tender a re-
ceipt before selling, and to advertise the property for a
designated period, yet there is no provision for a record of
such steps, and hence it is not incumbent on one claiming
real estate under a tax deed to prove them; the burden
being on the one assailing claimant's title to show the in-
validity of the sale.

2. Same—Sale by State—Sale of Excessive Amount of Land.—
Where the auditor's agent sells more land of the taxpayer
than is necessary to repay to the State the delinquent tax,
his act is void.

3. Same — Assessment — Validity—Assessment in Name of De-
cedent.—Gen. St. c. 92, art. 16, section 2, required owners of
land, nonresidents of the county where the land was situated,
to file a list of the land for taxation, and Act May 6, 1880 (1
Pub. Acts 1879-80, p. 206, c. 1565), provided that a sale of
lands for taxes should not be invalid on account of such
lands having been charged in any other name than that of
the rightful owner. Held, that where, after the death of a
nonresident, his heirs did not cause the land to be assessed
in their names, an assessment in the name of decedent was
valid.

4. Same—Sufficiency of Description.—Gen. St. c. 92, art. 4, section
1, prescribing the form of tax books, having provided as to
description, "Land, each tract in acres," a description of
land as "three acres" on the assessor's books was sufficient.

5. Same—Tax Sale—Report of Sale—Description of Land—Suffi-
ciency.—Gen. St. c. 92, art. 8, section 17, in relation to sales

of land to the State for taxes, required the sheriff to return to the county clerk a description of the land sold "as fully as he is able to do so;" and article 4, prescribing the form of tax book, provided as to description, "Land, each tract in acres." Held, that a sheriff's return, describing the land as "three acres," which was the description in the assessor's book, was sufficient.

6. Same—Effect of Sale on Title.—Auditor's Agent Act (Pub. Acts 1879-80, p. 206, c. 1565) section 4, directs the auditor's agent to sell lands bought in by the State for delinquent taxes, and unredeemed, and requires him to sell so much of the land belonging to the person assessed "as will discharge the tax." Held, that a sale by the sheriff to the State for non-payment of taxes does not divest the legal title.

7. Same—Action Against Claimant Under Deed—Issues and Proof —Plaintiff's Title.—Auditor's Agent Act (Act April 22, 1882; 1 Pub. Acts 1881-82, p. 108, c. 1304) section 8, provides that the purchaser at a sale by the auditor's agent of lands bought in by the State for delinquent taxes shall acquire all the title which the person assessed had. Held, that the Auditor conveys only the taxpayer's title, whatever it was; and hence, in ejectment by the heirs of a landowner against one claiming under an Auditor's deed conveying the land, defendant claimed through the decedent, and it was not necessary for plaintiff to show title further than him.

J. G. HUSBANDS for appellant.

OLIVER, OLIVER & McGREGOR for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Affirming.

There was listed for taxation, county and State purposes, a tract of 3 acres and 4 poles of land situated near Paducah, by G. A. Terry, for the year 1875. Terry having failed to pay the taxes due upon that assessment, the sheriff of McCracken county advertised the land for sale. No one offering to bid the amount of the tax due, and the costs of the levy and sale, amounting to $1.45, the land was struck off to

the State of Kentucky. On June 12, 1882, W. R. Howell, auditor's agent for McCracken county, sold the land, under an advertisement previously posted, for taxes due for the years 1876, 1877, 1878, 1879, 1880, 1881, and 1882, in addition to the taxes and penalties due for the year 1875. At this last-named sale S. B. Caldwell became the purchaser at the price of $15.75. The auditor's agent gave Caldwell a certificate of his purchase, and the Auditor of State, on the 20th of November, 1882, conveyed the land to Caldwell by deed. The land was again assessed for taxes in 1884, in the name of G. A. Terry, and was sold in 1885, when, there being no other bidder, it was again stricken off to the State. Caldwell conveyed the land to appellant, W. M. Husbands, by deed dated May 7, 1902. Appellant took possession and made some slight improvements. G. A. Terry died in 1878. His widow, now F. J. Polivick, and five infant children, survived him. The youngest of these became 21 years old May 4, 1900. This action was begun October 10, 1902, by the widow and children of G. A. Terry (he having died intestate), to recover the land from appellant. The plaintiffs alleged that they were the owners and entitled to the possession of the land, which was wrongfully withheld by defendant, W. M. Husbands, and prayed judgment for its recovery. Defendant denied plaintiff's ownership, and pleaded ownership in himself, setting out his title as being derived through the proceedings and conveyances above named. The plaintiffs, in avoidance of defendant's pleas, averred that the taxes for which the land was originally sold (1875 and subsequent years) were paid to the State by the widow of G. A. Terry before the sale by the auditor's agent in 1882. They also attacked the validity of the sheriff's sale in 1885, denying the steps of

.assessment, levy, advertisement, and sale, as charged in the answer. The case was tried by the court without a jury, and resulted in a judgment for the plaintiffs, adjudging them the land. ·From that judgment the defendant prosecutes this appeal.

The circuit court found, and the proof shows, that on June 10, 1882, Mrs. Polivick paid to Howell, auditor's agent, the tax due for the year 1875, and exhibits his receipt therefor. She also then delivered to the auditor's agent sheriff's receipts for each of the other years' taxes prior to 1882. Notwithstanding, the auditor's agent sold the land on June 12, 1882, to Caldwell as stated. Appellees contend that it was incumbent on appellant, when justifying his possession and claim under a tax title, to prove affirmatively that each step in the matter of assessing the land, of advertising it for sale when the taxpayer became delinquent, and every other step required by statute to be taken by the revenue officers of the State up to the execution of the Auditor's deed, was taken in the exact manner required by the statutes, and that, as appellant did not do so, the deed from the Auditor of State to Caldwell was not receivable as evidence on appellant's behalf. In this contention we do not concur. Many of the acts required by the statutes to be done before the collector could sell the land are such as from their nature there could not be a record of them. For example, the collector was required to first levy upon and sell the personalty of the taxpayer in the county, and was required to tender the taxpayer a receipt before selling. The collector was also required to advertise the property levied on for a designated period by written or printed notices. As there was not provision for a record of such steps, even if it had been possible to make such a public record,

which would of itself prove the acts to have been done as stated, it necessarily follows that proof of them, if required, must be had by the testimony of witnesses cognizant of the facts. The sheriff and the taxpayer were probably the only persons who could prove that the tax receipt had been tendered, and the taxpayer was the person most likely to know whether he then owned personal property in the county. The taxpayer in this case is dead. The sheriff has been out of office for nearly 30 years. He may be dead, or removed to an unknown region, or have no recollection at this late day of such details, so common among thousands of similar ones, perhaps.

The rule contended for by appellee would make it well-nigh impossible, and after many years it would be impossible to prove at all the antecedent facts requisite to the vesting of the title under a tax sale. The more ancient the transaction, the more infirm it would become, until in the course of time it would break in two by its inherent feebleness, and the whole transaction would become invalid from inability to prove it. Just the contrary is the general course of law. Time ripens most things, and makes perfect many acts hitherto doubtful. The courts require less evidence to establish an ancient fact than a recent one, because they appreciate the difficulty, and oftentimes the impossibility, of calling witnesses to prove the older facts. A notable instance is that an ancient writing proves its own execution, whilst it would be necessary to prove the execution of the same document, if recently made, by calling witnesses to the fact. Reason and public policy are that such transactions as official sales of land, by which its title is changed, should be susceptible of proof at all times, so that the link thereby made in the chain of title

affected should be as durable one time as another. This can be done, practically, in but one way; that is, to accord to the ultimate acts of the collector making the sale the presumptions accorded to all other official acts. The collector, whether the sheriff or another, acts under an official oath. He performs a duty to the public, and is required by the statute to make a return in writing over his official signature of what he has done. This action is made a public record, and is required to be recorded, and safely kept as a public record. Why, if it proves nothing?

The statute in existence when these transactions occurred, and which is yet in force (section 3760, Ky. St. 1903), was section 17, c. 81, Gen. St., which reads: "Unless in a direct proceeding against himself, or his sureties, no fact officially stated by an officer in respect of a matter about which by law he is required to make a statement, in writing, either in the form of a certificate, return, or otherwise, shall be called in question, except upon the allegation of fraud in the party benefited thereby, or mistake on the part of the officer." This section but declares the common-law rule, which holds that every officer acting under the sanction of an oath, or in whom the government reposes a trust, shall be presumed to have done his duty until the contrary is proven. Hickman v. Boffman, Hardin, 356; Scott v. Marshall, 5 J. J. Marsh, 435; Hickman v. Skinner, 3 T. B. Mon. 211; Case v. Colston, 1 Metc. 145. In Rudd v. Johnson, 5 Lit. 19, it was held that where an officer has authority to act he will be presumed to have acted correctly; but, where the existence of some fact is necessary to give him authority to act, such fact will not be presumed from his having acted. Even if that be held to be a literal statement of the rule, it would not alter the presumption accorded to

the officer's ultimate act in this case; for it is unde-
niable that, being the tax collector of the county, the
tax not being paid, and the tax roll showing its assess-
ment, he was authorized by law to sell the land for
the delinquent tax. It is therefore presumed, in the
absence of evidence, that he, in doing so, did all that
he was required by law to do; that he found no per-
sonal property in the county belonging to the tax-
payer; that he tendered the taxpayer the receipt be-
fore sale, and advertised the sale in the manner and
for the time required by law. The effect of this rule
is not to make the officer's certificate, or return, con-
clusive. It is a rule of evidence by which the burden
of proof is shifted to the party who questioned the
veracity of the officer's certificate. This rule applies
alike to the sheriff's sale and the auditor's agent's.
Consequently, the burden was upon appellees to show
that the sales were invalid for some reason not appear-
ing on the face of the returns.

As to the sale by the sheriff for the taxes of 1875,
there is no proof to contradict his certificate, or to
rebut the presumption accorded to it by law. But
that is not true as to the certificate given by auditor's
agent Howell to Caldwell in 1882. It was proved by
appellees that Howell was paid the tax assessed for
the year 1875, for which the land was struck off to
the State at the sheriff's sale, and that the tax for
the following years, prior to 1882, were also paid by
or for appellees. If the land was sold for all, or for
any of those years for which the tax had previously
been paid, there was no authority in the auditor's
agent to sell it. This is because he could sell only so
much of the land as was necessary to repay to the
State the delinquent tax. If he sold for more than
was due, as he would if he sold for years in which the

tax had already been paid, then he acted without authority, in that he acted without jurisdiction, and his act would be void. Blight's Heirs v. Banks, 6 T. B. Mon. 206, 17 Am. Dec. 136; Fish v. Genett, 56 S. W. 813, 22 Ky. Law Rep. 177; Griffin v. Sparks, 70 S. W. 30, 24 Ky. Law Rep. 850. We conclude that the sale by Howell, auditor's agent, to Caldwell, was ineffectual to pass the title of G. A. Terry, or of his heirs, in this land.

Appellant contends, however, that though that be conceded, still the taxes for the year 1884 were legally assessed against the land; that they were unpaid, and the land sold by the sheriff in 1885 to the State to pay same; that as the State did not have the title to convey in 1882, when it executed to Caldwell the deed by its auditor, its subsequently acquired title passed under the doctrine of estoppel to Caldwell; that, at any rate, it divested appellees of title, and is an insuperable obstacle to their suit in ejectment—they being without title. Whether the State is bound by the doctrine of estoppel is not free from doubt. But we waive that question. It must first be determined just what was the legal effect of the sheriff's sale of this land for taxes for the year 1884. If it was not such as to divest Terry's heirs of the title, then the question of whether the State is bound by the doctrine that after-acquired title will pass by its previous deed conveying no title will not arise in this case.

Appellees contend that the assessment of this property was invalid, and was void, because it was assessed in the name of G. A. Terry, who was then dead. In Oldhams v. Jones, 5 B. Mon. 458, it was held that land formerly owned by Robert Mosely, and listed by him for taxation as a nonresident in or prior to 1803, was legally assessed in his name for taxes for the

year 1810, although he had died in 1804. The court
said: "Although Robert Mosely was dead before the
imposition of the tax, and the title had vested in his
heirs, yet it vested in them subject to the payment of
accruing as well as existing taxes, and was equally
liable upon the entry in the name of their ancestor, as
upon a reentry in their own name. * * * Besides,
it was the duty of the heirs to have paid the taxes,
and to have entered the land in their own names.
They had also the right to redeem."

Appellees question the applicability of the foregoing
authority to this case, because they say it was rested
upon a peculiar statute then in force, and not in force
when the assessment in the case at bar was made, by
which nonresidents' lands were required to be assessed
in a peculiar manner. In the case at bar G. A. Terry
is shown to have been a nonresident of McCracken
county when the assessments of this land during his
lifetime were made. Section 2 of art. 16, c. 92, Gen.
St., then in force in 1884-5, required that owners of
land, who were nonresidents of the county where the
land was situated, should make out and file with the
county court clerk of such county a list of their lands
therein, which list was to be resorted to by the assessor
in assessing such lands for taxation. This provision
is essentially the same as that in force in 1803, under
which Oldhams v. Jones, supra, arose; the only differ-
ence being in the officers with whom the list was to be
filed and the assessment made, and the manner of
collecting the tax. The case sems to us to be pertinent
as authority.

By the act of May 6, 1880 (1 Pub. Acts 1879-90, p.
206, c. 1565), known as the "Auditor's Agent Act,"
it is provided in section 14 (page 208): "The sale of
lands shall not be invalid on account of such lands hav-

ing been listed or charged in any other name than that of the rightful owner.'' While this section would not and could not divest one of his title to his own land, which had been assessed to him, and the tax upon which he had paid, if it had also been assessed for the same period to another not the owner, and who had become delinquent therefor, still it seems to us to declare at least the same effect to an assessment allowed by the heirs at law to be made in the name of their deceased ancestor who had formerly owned it, and from whom they inherited; they not having had it assessed in their own names. The act of 1886—the Hewitt bill—went further in declaring the legislative purpose as to informalities in assessments. By section 12, art. 6, c. 92 (title ''Revenue and Taxation,,), it is provided: ''But no error or informality in the assessment, or in the description or location of the property, or in the name of the owner or party assessed, shall invalidate the assessment if the property can, with reasonable certainty, be located from the description given.'' Carried into present revision as Carroll's St. 1903, section 4056. The legislative idea was to make the identical property bear its share of the public burden, and to prevent its escaping through misadventure of the assessing officers in listing it. Mere informalities were to be ignored. Such, as we have seen, was the judicial idea, also, as early as 5 B. Monroe. The property owner ought to assess his property for taxation. It is his legal and patriotic duty to do so, and to pay the taxes on it. If he refuses or neglects to assess it, and thereby error is committed by the assessing officials of a technical or trivial nature, such as misdescription of the name of the owner, or the lot of land, or the like, it ought not to avail the taxpayer to escape his duty to pay his taxes.

Nor will it, if his property has been identified in the assessment so that thereby it may be located.

The assessment made of this land in 1884 was as follows, on the assessor's books prepared by the State:

| Full name of tax-payers of Mc-Cracken Co. | Land, each tract in acres. | Name of nearest resident. | No. of election precinct in which situated. | Value of land. | |
|---|---|---|---|---|---|
| Terry, Geo. A. N. R. | 3 | Mrs. Diehl. | 2 | 200 | |

It is contended that this assessment is invalid because it is not a sufficient description of the property to identify it. From the nature of the case, description of lands on the assessors' books in this State, where the sectional system of surveys and descriptions are not and have never been in use, except in a small portion of the State, cannot be as full as is generally given in deeds. Nor is it necessary that it should be. It is certainly competent for the Legislature to prescribe the form of assessors' books. If it does, it is not for the court to say that assessments made in such form are not adequate. The statute then in force on this subject was section 1, art. 4, c. 92, tit. "Revenue and Taxation," Gen. St., as follows:

### FORM OF TAX-BOOK.

Section 1.   The tax-book shall be in the following form:

| | |
|---|---|
| 1. | Full names of tax-payers of .......... county. |
| 2. | Land each tract in acres. |
| 3. | Nearest resident. |
| 4. | Number of election precinct in which situated. |
| 5. | Value of lands. |

et cetera.

The assessment in this case was in strict conformity to the statute, and was a sufficient description of the land.   The question then arises whether the sheriff's sale, and the certificate he is required to give of the land, when sold for delinquent taxes, should give a more extended description of the property levied on and sold.   It is to be remembered that in this case the land was not sold to a stranger by the sheriff, but was struck off to the State because there was no other bidder.   The statute regulating the sheriff's duties in that respect is not very explicit.   It was section 14, art. 8, c. 92, Gen. St., and reads, on this point: "And if one will bid for and purchase such land at the price of the taxes due and the costs of the sale, it shall be the duty of the sheriff or collector to purchase

same for the State, bidding therefor the taxes due and the costs of the sale." Section 17, same chapter and article, requires the sheriff to return and report in writing to the county clerk, showing when the sale was made, to whom, and at what price, "and giving a description of the land sold as fully as he is able to do." In this case the sheriff's report was filed as required; the description of the land being the same as is shown in the assessor's books. We are of the opinion that the description is sufficient.

The question now is, what effect upon the title of the delinquent taxpayer has such a sale? Section 14, art. 8, c. 92, above quoted in part, does not operate to transfer the title, or to divest the taxpayer of his title. It provides for a redemption of the land within certain periods, which in this case expired before the suit was brought, and without a redemption having been effected or attempted. It might not unreasonably be supposed that the State got what any other purchaser would have got under the sheriff's sale. But the Legislature has not thought so. This is indicated by the auditor's agent act, enacted first in 1880. By the fourth section of that act the auditor's agent is directed to sell the lands bought in by the State for delinquent taxes and unredeemed, and to sell so much of the land "assessed, or belonging to each person assessed or indebted," as will discharge the tax, interest, and charges thereon. In the amendment of April 22, 1892 (1 Pub. Acts 1881-82, p. 107, c. 1304; page 1111, 1887, Gen. St. 1887), the agent is directed to locate all lands in his county previously bought in by the State and remaining unsold. By section 5 it is provided: "Having so ascertained the location of said property and its present owner, said agent shall give public notice for 30 days that unless said taxes

and costs are paid, so much of said property as may be necessary will be sold to pay the same.'' By the seventh section it is provided that, if the taxes and costs are not then paid, the agent shall sell so much of the land as will be necessary to pay same. These provisions of the statute evidence a legislative construction that the title to the land remains in the taxpayer until the sale by the auditor's agent, when it is divested to so much only as may have been necessary to pay the delinquent tax and costs. This being true, the sale by the sheriff to the State for nonpayment of tax by the person assessed does not divest him of the legal title. It merely retains the State's lien, and provides for its summary enforcement.

It is not unreasonable to assume that the attitude of the Legislature on this subject was thoughtfully taken. In Robinson v. Huff, 3 Litt. 37, the question arose as to whether the title of the delinquent taxpayer was vested in the State by a proceeding almost identical with the one at bar. There, too, the question arose in the trial of ejectment, where the defendant showed the sale of plaintiff's title for taxes, and the purchase by the State, to defeat the plaintiff's action; the effort being to show that the plaintiff was not entitled to recover on the strength of his own title. The court said: ''We are of opinion that the sale for taxes to the State did not pass the legal title. It is a well-known rule of the common law that no freehold might be given to the king, nor derived from him, but by matter of record. 2 Bl. Com. 344. In conformity to this principle the Supreme Court of the United States, in the case of Fairfax's Devisees v. Hunter's Lessee, 7 Cranch, 603, 3 L. Ed. 453, decided that statutes of Virginia, which showed a strong intention in the Legislature to take and pass the title of real estate

without inquest of office, were insufficient for that purpose without express provision to that effect. No doubt this principle applies to our Commonwealth, as it did to the crown, and it is doubtless a common law rule subject to the control of the Legislature; but it is necessary that it should be clearly changed before we can disregard it.'' We conclude that the sheriff's sale of the land for the taxes of 1884, and its purchase by the State, did not divest Terry's heirs of their legal title, and are not a bar to their recovering the land from a stranger who is wrongfully in the possession of it.

    On the trial plaintiffs did not show title derived from the Commonwealth. Appellant contends that he was, on that account, entitled to a nonsuit. But it was denied him. The circuit court applied to this trial the principle that, where plaintiff and defendant each derive, or claim, their title from a common source, it is unnecessary for either to trace title further than the common grantor, as each is estopped to deny the validity of his title. Appellant contends however, that that rule is inapplicable to the case at bar, because when the title became vested in the Commonwealth by the sheriff's sale of 1878 for the taxes of 1875, all antecedent title was merged in the sovereign; that the Auditor's deed made on behalf of the State was effectual to convey, not only such title as the taxpayer may have had, but any title the State may have had from any other source; that as all title to land within the Commonwealth was originally in the State, unless a prior grant from the State was shown by the plaintiffs, defendant's deed from the State, executed by the Auditor, was a grant by the State, showing superior title in the defendant. We think appellant misconceives the office and nature of

the Auditor's deed.   The auditor acts no more in be-
half of the State in the matter than does the sheriff
in conveying by deed to an individual purchaser who
buys at a tax sale made by the sheriff.   Each, the
Auditor of State and the sheriff, conveys only the.
title of the taxpayer, whatever that was.   It does not
purport to do more.   If there was any doubt about it,
section 8 of the auditor's agent act (act approved
April 22, 1882) puts it at rest.   That section provides:
"The purchaser at such sale shall acquire all the title
which the person to whom said property was assessed
had therein, at the day of the assessment, and free
from all liens or claims of any person claiming under
or through him, except State taxes subsequently
assessed against such property, and unpaid at the date
of said sale."   Defendant, then, claims title through
G. A. Terry, as do the plaintiffs.   It was not necessary
in this action for plaintiffs to have traced their title
to the Commonwealth, as defendant was estopped to
deny G. A. Terry's previous title.

It follows that the judgment should be affirmed,
which is ordered.