MATTIE MOSIER, *Appellant, v.* SARAH F. ALLENBAUGH
*et al.* (JENNIE CARTER, *Appelle*).

No. 16,936.

SYLLABUS BY THE COURT.

QUITCLAIM DEED—*Estate Conveyed—Expectancy.* A quitclaim
deed to real estate owned by the maternal grandmother of
the grantor (the mother of the latter being deceased), who
expects to inherit from her a share thereof, conveys nothing
and does not preclude the grantor from subsequently claiming
the share devised by the grandmother to the deceased mother
of the grantor.

Appeal from Allen district court. Opinion filed
March 11, 1911. Affirmed.

*Chris. S. Ritter,* and *Frank R. Forrest,* for the ap-
pellant.

*Travis Morse,* and *G. E. Pees,* for the appellee.

The opinion of the court was delivered by

WEST, J.: Morgan B. Kitsmiller died many years
ago, leaving his widow, Mary J. Kitsmiller, and cer-
tain children, including a daughter, Ella, the mother
of the appellee. The widow owned in her own right
a piece of land referred to in the evidence as the north
eighty. In April, 1906, several years after the decease
of appellee's mother, some negotiations were had rela-
tive to purchasing the interest of appellee in this north
eighty, and she claims to have received legal advice that
she could not convey her interest, as it was only an
expectancy, contingent upon inheriting some portion
of the land at the death of her grandmother. Mary J.
Kitsmiller died April 4, 1908, seized of the undivided
half of the real estate left by her husband and also
seized of the north eighty hereinbefore referred to. She
left a will dividing the latter equally among her nine
children, including Ella, the appellee's mother. On June

8, 1908, the appellant filed her petition for partition, and on November 30, 1908, the trial court ordered partition and awarded appellant a two-ninths interest, which included her interest as devisee under the will and also the interest of appellee, which the petition alleged had been conveyed by the deed now in controversy, executed April 30, 1906. September 19, 1908, the appellee was made a defendant at her own request, and filed a cross-petition admitting that before the death of her grandmother, Mary J. Kitsmiller, she, the appellee, had conveyed to the appellant all of her interest in the estate of her grandfather, but averring that she was still the owner of an undivided one-ninth of her grandmother's interest therein and also an undivided one-ninth of the land belonging to her grandmother at the time of her death. To this cross-petition the appellant answered that by the deed of April 30, 1906, appellee had conveyed her expectant interest in her grandmother's land for an ample consideration, duly paid, to which answer a general denial was filed, and the court, on July 27, 1909, found in favor of the appellee. The question of vital importance, therefore, is as to the effect of the quitclaim deed. The instrument, omitting the acknowledgment, was as follows, the second description covering the land formerly owned by Mary J. Kitsmiller:

"This indenture, made this 30th day of April, in the year of our Lord, one thousand nine hundred and six, between Jennie Carter and Robert Carter, her husband, heirs of Morgan B. Kitsmiller, deceased, of La Harpe, in the county of Allen, and state of Kansas, of the first part, and Mattie Mosier, of the second part,

"Witnesseth: That the said parties of the first part, in consideration of the sum of fifty-five and no-100 dollars, to them duly paid, have sold, and by these presents do remise, release and quitclaim, to the said party of the second part, her heirs and assigns, forever, all their right, title and interest in that tract or parcel of land situated in the county of Allen, and state of Kansas, and described as follows, to wit: The east half (½) of the southeast quarter (¼) of section twenty (20),

township twenty-five (25), range twenty-one (21); also the north half of the northeast quarter (¼), of section twenty-nine (29), township twenty-five (25), range twenty-one (21), with all the appurtenances, and all the estate, title and interest of parties of the first part therein.

"To have and to hold, all and singular, the above-described premises, together with the appurtenances, unto the said party of the second part, her heirs and assigns, forever.

"In witness whereof, the said parties of the first part have hereunto set their hands and seal the day and year above written.        JENNIE CARTER (Seal).
        ROBERT CARTER (Seal)."

The execution of the deed was not denied, and the testimony shows that the consideration was fair. It appears that the appellee had about negotiated a sale to another party when her aunt, the appellant, suggested that she would give five dollars more, and soon thereafter the two went to Bronson, where the deed was prepared by Mr. Lardner, cashier of the bank, and was executed and delivered. The appellant claims that she was buying all the interest that her niece had, present and prospective; that "she wanted to sell all that she had"; and that she, appellant, would not have bought but for the understanding that she was buying her niece's interest in Mary J. Kitsmiller's land. The appellee testified as to the conversation at the bank:

"All I remember of, she said, Do you mean to sell me all of it or just the share in the north eighty?

"Ques. What did you mean by all of it? Ans. I had reference to the two properties, the grandmother's and grandfather's. I told her that Mr. Ritter had advised me that I could not sell what did not belong to me; that grandmother's estate belonged entirely to her at that time."

She further testified that appellant did not say that she had to convey all her interest, vested and expectant, but that the appellant had spoken in the morning about conveying it and was told that appellee had been ad-

vised that she could not convey what did not belong to her.

"Ques. What did Mrs. Mosier say then? Ans. She wanted it fixed out in that way, and I told her to fix it up to suit her, but it was not legal.

"Q. You fixed it up that way though, did n't you, including your interest in your grandmother's estate? A. No, sir; I did not.

"Q. Did you consent? You told her to go ahead and fix it up to suit herself, you say? A. I told her to give the numbers of the land because I did not know the numbers."

She further testified that she preferred selling to Mrs. Mosier, the appellant, because she was a member of the family, but that she, appellee, did not try to convey her grandmother's share.

"Ques. You did intend to convey all the interest vested and expectant in the Kitsmiller properties, but you had been informed that you could not legally do so? Ans. Yes, it is true."

The rule is settled in this state that generally a quitclaim deed passes only what the grantor owned at the time of its execution, and it is clear that the appellee, at the time she made the deed in question, was vested with no interest whatever in the land in controversy. In *Clendening v. Wyatt,* 54 Kan. 523, the instrument not only employed the language usual in a quitclaim deed, but added an express release of the grantor's undivided portion of what he might be entitled to of his mother's estate, thus making it apparent from the face of the instrument that the intention was to transfer the expectancy. In *Bliss v. Brown,* 78 Kan. 467, it was held that a warranty deed of his mother's estate, executed by a son against whom a valid lien existed and who subsequently took the estate by operation of law, conveyed no title, but that the warranty deed estopped the son from repudiating the claims of his grantee. The court said:

"The whole title, legal and equitable, belonged to his

mother.  This deed was a nullity so far as her title to the land is concerned."  (p. 475.)

In *Knight v. Dalton,* 72 Kan. 131, a husband who had contracted with another to care for his insane wife made a quitclaim deed to the real estate of the latter, subject to a life estate in himself.  He claimed, and the court held, that the intention was not to convey a future interest, but simply to secure compliance with his contract.  The court said (citing authorities) :

"He had no interest whatever, except the possibility that he might outlive his wife and inherit from her in case the property had not been transferred.  As he had no estate or vested interest in the land, his mere quitclaim, if it had been so intended, would not have affected the title nor have carried to the grantee any estate or title which the grantor might subsequently acquire."  (p. 134.)

In *Glover v. Condell,* 163 Ill. 566, it was held that an ordinary quitclaim deed will not cover a future contingent interest, limited to the surviving members of a class of which the grantor is a member, upon the event of the death of one of them without living issue, where no terms are used which refer to future interests.  The court said:

"A quitclaim is sufficient to pass any estate which the person executing it has at the time of such execution, but it can not affect by way of release a future contingent interest, limited to the surviving members of a class, upon the event of the death of one of them without living issue at the time of his death, there being no terms used in such quitclaim or release which can be construed as referring to future interests. (*Striker v. Mott,* 28 N. Y. 82.)  In order to create an assignment of future interests and contingencies, 'there must be on the face of the instrument expressly, or collected from its provisions by necessary implication, language of present transfer directly applying to the future as well as to the existing property, or else language importing a present contract or agreement between the parties to sell or assign the future property.' (3 Pom. Eq. Jur. § 1290.)"  (p. 594.)

The instrument in question is not ambiguous, and nothing can be found in its terms indicating an intention to transfer an expectancy. The court for some reason permitted evidence as to the execution of the deed, previous expressions and subsequent conduct of the parties, and the intentions of each, but did not find therefrom that the instrument went beyond its plain and manifest terms.

Complaint is made that the court erred in placing upon the appellant the burden of proof, but doubtless the court considered her the original plaintiff in the action and deemed it incumbent upon her to support the allegations of her petition as to her ownership of the land in question, and the fact that the appellee filed a cross-petition setting up her interest and the appellant denied by reasserting the deed would hardly justify the court in placing the burden upon the appellee. But the case was tried by the court, without a jury, and we can not see that any injury was caused to either party by this ruling.

The judgment of the trial court is affirmed.