BROWN et al. v. HARVEY COAL CORPORATION et al.

No. 1096.

District Court, E. D. Kentucky.

March 26, 1931.

creeks in Perry county in this district, and contains 23.03 acres. It is, or rather was, valuable coal land, and the petition seeks to recover also $253,000 damages for entering thereon and removing coal therefrom.

The petition does not set forth the plaintiffs' title to the land. It merely alleges generally that they are the owners and entitled to the possession. This allegation is met by a flat denial on defendants' part in their answer, and the burden is on plaintiffs to make it good. They have never had possession of the land, and, if they have title, it can only be by virtue of a chain of title reaching back to the commonwealth. The immediate deed under which they claim was made to them by S. M. Boggs and wife August 17, 1921. This deed recites that it is part of the land patented on December 20, 1912, to the grantor, S. M. Boggs, by the state of Kentucky under patent No. 68,900, and a part of the land conveyed to him by Rogers T. Moore and wife by deed dated October 28, 1920. Patent No. 68,900 issued June 27, 1913, on a survey dated December 20, 1912. It is conceded that Boggs acquired no title by virtue of his patent, because the land covered by it was then covered by a senior patent to Stephen G. Reid, which issued April 11, 1872. That patent covered a boundary of land containing 68,800 acres from which was excluded 13,800 acres of previously patented land, leaving 55,000 acres to pass to the parties. It is only, therefore, by virtue of the Moore deed that plaintiffs can have title and that only if such deed connects them with the Reid patent. That deed purported to convey to Boggs Moore's interest in four separate tracts of land covered by the Reid patent; the fourth one being the land in controversy. It recited that Boggs had purchased the Reid patent at judicial sale in a suit pending in this court, which sale was had August 19, 1919, and on April 29, 1920, had assigned his bid and right to a deed to Moore pursuant to an agreement with him by which he was to convey those four tracts to Boggs after he had received a deed from the court. The words of the grant were "do hereby grant, bargain, sell and convey and quit claim * * * all of their right, title and interest in and to" those four tracts. The habendum clause was "to have and to hold unto the said S. M. Boggs, his heirs and assigns, all of the right, title and interest which" the grantors were entitled to under the deed from Wm. Worthington, commissioner of this court, and to be dated July 24, 1919, lodged for record, but not yet recorded in Perry county court

Bailey P. Wootton, of Hazard, Ky., and Todd & Beard, of Shelbyville, Ky., for plaintiff.

Jesse Morgan and P. T. Wheeler, both of Hazard, Ky., for defendants.

ANDREW M. J. COCHRAN, District Judge.

This is an action of ejectment submitted to me for trial and judgment; a jury being waived. The land sought to be recovered is situated on the waters of First and Lost

clerk's office. It concluded with these words: "It is thoroughly understood between the parties hereto that said Rogers T. Moore and Jane W. Moore warrant the title to said property only as against themselves and their heirs and assigns."

The deed from William Worthington, commissioner of this court, to Rogers T. Moore was dated, not July 24, 1919, as stated in the Moore deed to Boggs, but June 14, 1920. It purported to convey all the right, title, and interest of Oscar A. Sears in and to the land covered by the Reid patent. It recited that the style of the suit in which such sale was had was the Goodrich-Lockhart Company against Oscar A. Sears and others. Boggs testified that, after he had purchased the Reid patent, Moore asked him as to what he wanted it for; that he said that he had a little junior patent inside of it; that Moore asked him what he would take for his bid; that he said that he would take just what he bid if he was allowed to exclude that junior patent; and that it was pursuant to this understanding that the assignment was made.

I proceed now to trace the title back from Oscar A. Sears. He claimed title to the Reid patent under a deed from Sam Colwell to him dated September 2, 1912, and Colwell claimed title thereto under a deed to him from F. P. James, auditor of the state of Kentucky, dated February 11, 1911. This deed purported to convey to Colwell "all of the Kentucky Union Company's interest, if any," in the Reid patent. It recited that it was made in consideration of "$35. cash paid to William Strong, Revenue Agent for Perry County"; that "all of the above described land" was "assessed and listed in the name of Kentucky Union Company for taxes for the year 1905 and sold and forfeited to the State of Kentucky and Perry County on the 11th day of December 1905 for the non-payment of the revenue due on said land for the year above mentioned as will more fully appear by the records of the Perry County Court"; that same was not redeemed within two years next after the sale; that thereafter sale was had after advertisement by printed notices published in Mountaineer, a newspaper of general circulation published in Hazard, Ky., Perry county, and by posting notices at the courthouse door and in three other public places in Perry county for more than 28 days previous to the sale; and that on Monday, 11th day of April, 1910, county court day at the courthouse door, the day and place advertised, and no one offering to pay the whole tax for a part of the land, all of it was sold publicly by William Strong, revenue agent, Perry county, to Sam Colwell for sum of $35 —the highest and best bid.

It is the claim of plaintiffs that, by virtue of this deed, they are connected as to the land in controversy, in that it is covered by the Reid patent, with the title of the Kentucky Union Company thereto, and it has been stipulated that that company was the owner thereof. Such, indeed, is the prima facie effect of that deed. In the case of a sale of land by the sheriff for taxes, if some one other than the state purchases it after the lapse of two years without redemption, he makes a deed to the purchaser. If no one bids for the land, and it is bought in for the state, the sheriff makes no deed to the state, but is required by section 4162, Kentucky Statutes, to make a written report of the sale to the county clerk, to be recorded and indexed by him in a book provided for that purpose. The provision of that section is that this report, when recorded, shall operate as a conveyance and vest the title of all persons "sui juris" in the state, county, or district or either. The provision of section 4154 is that, if the land is not redeemed within two years, the fee-simple title thereto shall vest absolutely in the state, county, and district. This section provides for a sale of the land thereafter by the auditor and making deed to the purchaser at such sale. Prior to 1893, one claiming under a sheriff's deed of land sold for taxes had the burden of establishing that the sale and all the steps taken to that end were regular, in order that it might be effective to pass the title. In that year what is now section 4030, Kentucky Statutes, was enacted. It is in these words: "In all suits and controversies involving the titles of lands claimed or held under the deed executed by the sheriff in pursuance of the sale for taxes, the deed shall be prima facie evidence of the regularity of the sale and of all prior proceedings and title in the person to whom the deed has been executed."

As this provision was limited to a claim under a sheriff's deed, it could have no application to a claim under an auditor's deed. And it would seem that in the latter case the burden was on the claimant to establish the regularity of the sale and all prior proceedings, as had been the rule in case of one claiming under a sheriff's deed before the enactment of section 4030. But the Court of Appeals of Kentucky, after the enactment thereof, held that an auditor's deed was prima facie evidence of such regularity, the same as in sheriff's deeds. It worked this out

under section 3760, which is in these words: "Unless, in a direct proceeding against himself or his sureties, no fact officially stated by an officer in respect of a matter about which he is by law required to make a statement, in writing, either in the form of a certificate, return or otherwise, shall be called in question, except upon the allegation of fraud in the party benefited thereby, or mistake on the part of the officer." Alexander v. Aud, 121 Ky. 105, 88 S. W. 1103; Husbands v. Polivick, 128 Ky. 652, 96 S. W. 825, 827; Ky. Lands Invest. Co. v. Simmons, 146 Ky. 588, 143 S. W. 43; Kypadel C. & L. Co. v. Millard, 165 Ky. 432, 177 S. W. 270, 272.

In the last case the position taken as to the prima facie evidence of an auditor's deed was rested solely on section 4030. It was said: "Auditors' and sheriffs' deeds for tax sales are in the same category."

In view of the fact that section 3760 is much older than 1893, when section 4030 was enacted, going back at least to the General Statutes of 1873, one cannot help wondering why section 3760 had not been relied on prior to 1893 as giving a prima facie effect to sheriff's deed, thus doing away with the necessity for the enactment of section 4030.

But the auditor's deed or the sheriff's deed, as the case may be, is simply prima facie evidence of regularity. One claiming against such a deed is at liberty to establish irregularity in the sale or prior proceedings, and, if he succeeds in doing so, the deed will be void and not a source of title to the person claiming under it. In the case of Husbands v. Polivick, supra, it was said: "It is a rule of evidence by which the burden of proof is shifted to the party who questions the veracity of the officer's certificate."

In the case of Hamilton v. Steele (Ky.) 117 S. W. 378, 379, it was said: "In other words, the statute, enacted since the opinions * * * referred to were rendered, shifted the burden from the purchaser to the owner of the land; but it did not change the rule as to the requirement that, before a person can obtain a complete title under a tax sale, each legal step that the law requires in order to subject it to sale must be complied with."

In the case of Miller v. Powers, 184 Ky. 421, 212 S. W. 453, 455, it was said: "A tax deed does not confer title on the grantee if the proceedings by the sheriff, clerk of the county court, and purchaser which lead up to the deed were irregular, and essential steps were omitted. Such deed may be attacked at any time because it is void."

Here the defendants have assumed the burden of attacking the tax deed relied on. That deed simply passed the title of the state, such as it may have been, to Colwell, the grantee. The passage of the title from the Kentucky Union Company to the State was evidenced and effected, in so far as it was effected at all, by the report of the sheriff filed with the county clerk, as required by section 4162, Kentucky Statutes. By section 4164 it is provided: "Copies of the records aforesaid, certified by the county clerk, shall be evidence of the facts stated in them in all the courts of this Commonwealth."

The defendants have introduced in evidence a duly certified copy of the report of the sheriff as to the sale pursuant to which the deed relied on was made. According to it, five tracts of land had been sold by him as the property of the Kentucky Union Company. It gives no description whatever of those tracts other than the nearest resident and the precinct in which same is located. It does not give the acreage of either tract which the statute requires should be given. There is nothing whatever in the report identifying the land covered by the Reid patent as that which had been sold. No part of that patent is in either one of the precincts named. It is clear, therefore, that the tax deed upon which plaintiffs rely is absolutely void. Wash v. Noel, 160 Ky. 847, 170 S. W. 197; Hogue v. Gibson, 162 Ky. 814, 173 S. W. 138; Kypadel C. & L. Co. v. Millard, supra.

The sole point which the plaintiffs make is that the deed in question was not attacked by defendants by pleading. This is not well taken. There was no occasion for them to do so. The plaintiffs did not set forth in their petition their chain of title, and this deed is one of the links in the chain. Had they done so, possibly, it would have been incumbent on defendants in their answer to have set forth and relied on this irregularity in the proceedings upon which the deed was based. The plaintiffs contented themselves with the general allegation as to ownership and right of possession, which defendants denied. The only opportunity which they had to attack it was after plaintiffs introduced it in evidence, and the only way in which they could then attack it was by introducing in evidence a certified copy of the sheriff's report. The giving of prima facie effect to the deed implies that it may be attacked and overthrown by counter evidence. By reason of the irregularity relied on, the deed was not a muniment of title, but was absolutely void.

In the case of Wildharber v. Lunkenheimer, 128 Ky. 344, 108 S. W. 327, 329, it was said: "We must give some force to this provision of the statute, the manifest aim of which was to make the sheriff's deed prima facie evidence of title in the purchaser. As the title is the only thing in issue in this action, and as the sheriff's deed is prima facie evidence of the purchaser's title, when his deed was read in evidence, he had made out a prima facie case, and the burden rested on the plaintiffs to overcome the prima facie case which he had thus made out."

In the case of White v. McIntosh, 145 Ky. 59, 139 S. W. 1057, it was said: "The burden is on the party who assails the tax deed to allege and prove the invalidity of the sale." But in that case the plaintiff in his petition sought recovery on a tax deed, and the defendant in his answer attacked it.

In the case of Jones v. Johnson, 223 Ky. 478, 3 S.W.(2d) 1064, it was said: "Under Kentucky Statutes, §§ 3760 and 4030, a tax deed executed by the auditor is only prima facie evidence of the regularity of the tax sale, and of title in the grantee. * * * That being true it does not preclude an attack on the sale, but merely places on him who makes the attack the burden of pleading and proving such irregularities as will avoid the sale."

That case involved a direct attack by a taxpayer on an auditor's deed, and sought to have it set aside as a cloud on his title. The expressions in these two cases should be limited to the character of case involved. They have no pertinency to the case here involved. As stated, the first opportunity which defendants had to attack the tax deed was when it was introduced in evidence, and then it attacked it in the only way that it was then possible for it to attack it; i. e., by introducing counter evidence which showed the deed to be absolutely void.

The conclusion, therefore, is inescapable that Boggs acquired no interest in the land in controversy under the Reid patent by virtue of the deed by Moore to him. Moore had no title thereto, and could pass none to Boggs. Hence it was that plaintiffs acquired no title to the land by virtue of the deed of Boggs to them. Boggs had no title thereto either under his patent or the deed of Moore to him, and could pass none to them. It follows that, nothing else appearing, they must fail in this action.

But plaintiffs claim that, notwithstanding this, they are still entitled to recover by virtue of two deeds made to Moore subsequently not only to the deed from Moore to Boggs, but also to the deed from Boggs to them. One of these deeds is a deed made by the Kentucky Union Company April 8, 1922, and the other by John Craig, auditor, May 14, 1923. Their claim is that this after-acquired title inured to their benefit as the grantees of Boggs, who was the grantee under the prior deed of Moore. Moore acquired no title by the auditor's deed. It is a tax deed made in pursuance of a sale of the Reid patent for taxes in 1915 as the property of Goodrich-Lockard Company, plaintiff in the suit in which that patent was sold and conveyed by Worthington, commissioner, to Moore. There is nothing to show that that company then or ever owned or laid claim to the Reid patent. If it ever had any claim thereto, it was under the deed of James, auditor, to Colwell, which has been shown to be absolutely void. Then, if it be taken that Moore acquired title to the Reid patent by virtue of the deed of Kentucky Union Company to him, it did not inure to plaintiffs' benefit. The plaintiffs stress greatly the position that it did, but there can be no question that it did not. To make this good calls for some elaboration.

At the outset, an accurate understanding as to the nature of the deed of Moore to Boggs dated October 28, 1920, should be had. It is nothing more than a quitclaim deed. In the case of Hosman v. Willett (Ky.) 107 S. W. 334, 336, the test as to what constitutes a quitclaim deed is thus stated: "The law is well settled that a quitclaim deed is as effectual to convey land as any other deed; the only difference being that the former does not contain covenant of warranty."

This, however, is inaccurate. The true test is set forth in the case of Cook v. Smith, 107 Tex. 119, 174 S. W. 1094, 3 A. L. R. 940, and in the note thereto in 3 A. L. R. beginning on page 945. In the case the test is thus put: "The character of an instrument, as constituting a deed to land or merely a quitclaim deed, is to be determined according to whether it assumes to convey the property described, and upon its face has that effect, or merely professes to convey the grantor's title to the property. If, according to the face of the instrument, its operation is to convey the property itself, it is a deed. If, on the other hand, it purports to convey no more than the title of the grantor, it is only a quitclaim deed."

In the note the test is put thus: "The distinguishing characteristic of a quitclaim deed is that it is a conveyance of the interest or

title of the grantor in and to the property described, rather than of the property itself."

The presence of a warranty in what would otherwise be a quitclaim deed does not of itself render it not such a deed. In the same note, page 950 of 3 A. L. R. it is said: "Language used in the warranty clause has sometimes been relied on as evincing an intention to convey the property itself, rather than a claim thereto. * * * The fact that the deed contains a covenant of warranty is not, however, conclusive that it is not a quitclaim."

Here the words of the granting clause are "do hereby grant, bargain, sell and convey and quit claim * * * all of their right, title and interest in and to" the four tracts described. The habendum clause is in these words: "To have and to hold unto the said S. M. Boggs, his heirs and assigns, all of the right, title and interest which" the grantors were entitled to under the deed from William Worthington, commissioner. Thus far clearly the deed is a quitclaim deed. It does not undertake to convey the four tracts of land, but only all the right, title, and interest of the grantors therein. The deed, however, does not stop here. It contains a warranty clause which is in these words: "It is thoroughly understood between the parties hereto that said Rogers T. Moore and Jane W. Moore warrant the title to said property only as against themselves and their assigns."

The warranty is a special warranty, and what is warranted is the title "to said property." What they meant by these words was, not the four tracts, but the grantor's interest therein.

In the case of Comstock v. Smith, 13 Pick. (Mass.) 116, 23 Am. Dec. 670, the grantor "granted, sold and quit-claimed to the grantee all" his right, title, claim and demand "in and unto" certain premises, and covenanted to warrant and defend "the granted and quit-claimed premises" to the grantee "against the lawful claims and demands of all persons claiming by or under him." In referring to the warranty in the case, the court said that it "is a restricted covenant, and is coextensive with the grant or release. He agrees to warrant the title granted or released, and nothing more." The court said further: "The tenant, in covenanting to warrant and defend the granted or released premises, must be understood to refer to the estate or title sold and released, and not to the land, because he did not certainly intend to warrant any estate or title not intended to be conveyed."

In this case there is a particular reason for limiting the words "said property" in the warranty to the title or interest conveyed. The grantee, Boggs, was the purchaser of the Reid patent at the judicial sale, and entitled to have a deed made to him therefor. Instead of assigning his bid to Moore under a contract that, upon deed being made to the latter, the latter should convey the four tracts to him, he could have had the deed made to himself and then conveyed all of the Reid patent to Moore, except the four tracts, or he could have assigned his bid as to all of that patent except the four tracts and had a deed made to Moore therefor and to himself for the four tracts. If the transaction had been carried out in either of these ways, there would have been no warranty on Moore's part to Boggs as to the four tracts. Moore assumed payment of Boggs' bid for the entire patent, and Boggs obtained the four tracts without having to pay anything for them.

That a title acquired by the grantor in a quitclaim deed after the making of the deed does not inure to the benefit of the grantee therein is clearly settled. The subject of a title acquired by a grantor in a deed after the making of his deed inuring to the benefit of the grantee is dealt with in an ample and exhaustive note to the case of U. S. Nat. Bank of La Grande v. Miller, 58 A. L. R. 339, beginning page 345.

The rule in case the deed is a general warranty deed is thus stated (page 350 of 58 A. L. R.): "It is a general rule, supported by many authorities, that a deed purporting to convey a fee simple, or a lesser definite estate in land, and containing covenants of general warranty of title or of ownership, will operate to estop the grantor from asserting an after-acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him. One of the more frequent ways of expressing the rule is that the subsequently acquired title inures to the benefit of the grantee."

Later on in the note (page 381 of 58 A. L. R.) it is set forth that, according to the weight of authority, in case of such a deed, there is no necessity for its containing any warranty in order to the working of the estoppel and the subsequently acquired title inuring to the benefit of the grantee. It said: "The great weight of authority supports the principle that, whatever the form or nature of the conveyance, if the grantor recites on the face of the instrument, either

by express terms or necessary implication, that he is seised or possessed of a particular estate which the deed purports to convey, the grantor and all persons in privity with him are estopped from afterwards denying the same, or asserting that title subsequently acquired by the grantor would not inure to the benefit of the grantee."

Again (page 384 of 58 A. L. R.) it is said: "There is no magic in the term 'warranty' as applied to a deed of conveyance; the same is employed merely to designate the contract of the vendor, which, solely because it is a contract, operates to pass to the vendee a title outstanding against the property at the time of the conveyance, whenever the same is acquired by the grantor thereafter. The decisions, it has been said, have abandoned the technical ground taken in the earlier cases, that the estoppel grows out of warranty, and place it on the broader basis of giving effect to the intention of the parties as expressed in the deed."

The rule in cases of quitclaim deeds is stated (page 360 of 58 A. L. R.) thus: "The general rule is well established that, if a deed does not purport, by express terms or by implication, to convey a particular estate, but only the grantor's title or interest,— in other words, if the conveyance is merely by quitclaim deed, and there are no covenants or recitals showing an intention to convey any definite interest or estate,—the grantor is not thereby estopped from asserting an after-acquired title."

Decisions are cited from thirty-six jurisdictions in support of this statement; twelve of them being federal decisions and three Kentucky.

It is said (page 364 of 58 A. L. R.) further: "While all of the provisions of a deed or mortgage are to be taken into consideration in determining the effect of the same as a quitclaim or otherwise, if it appears therefrom that it is merely a quitclaim, and does not affirm or purport to convey any particular estate, covenants of warranty or of title therein will not enlarge the estate granted or mortgaged, but will be construed as referable to the existing estate or interest of the grantor or mortgagor. * * * To assert an after-acquired title or interest, in the case of a quitclaim deed, does not depend upon the presence or absence of covenants in the deed."

So much as to the law generally on this subject. We are concerned more directly with the law in this state. It is said above that three Kentucky decisions are cited in support of the statement of the law in case of quitclaim deeds. In two of them the rule thus stated is merely recognized. In only one of them is it applied. In the case of Smith v. Mahan, 7 T. B. Mon. p. 228, it was held that, where one coparcener executes a deed of conveyance for the whole land, his warranty, though only against those claiming under him, will estop him from asserting title against his alienee or vendee, to an interest which afterwards descends on him from his coparceners. This case is authority for the position that, where one conveys land with special warranty, he is estopped from asserting an after-acquired title against his grantee, and such title will inure to the benefit of such grantee. It is open to say that this is due, not to the special warranty, but to the nature of the conveyance, it being of the land or as in that case of the whole land. This is in accordance with the statement of what is the great weight of authority as to the effect of such a conveyance without any warranty of any kind. That the estoppel would not have existed had the conveyance been not of the whole land, but only of the grantor's interest therein, and that notwithstanding the special warranty, was recognized by these words in the opinion: "Such [i. e. the estoppel], it is true, would not have been the effect of the warranty, if, as was contended in argument, the deeds were construed to import a conveyance of nothing more than the undivided coparcenary interest to which at the time, the vendors were entitled; but according to no rule of interpretation can the deeds, or either of them, be so construed. The language used in each deed plainly imports a conveyance of the whole tract, and neither deed contains any expression calculated to limit the operation of the warranty to a part of the title only."

In the case of Johnson v. Johnson, 173 Ky. 701, 191 S. W. 672, 675, it was said: "The rule announced in Devlin on Deeds, vol. 1, § 27, that 'a quitclaim deed purports to release and quitclaim only whatever interest the grantor possessed at the time,' and that 'by the use of this form of conveyance he does not thereby affirm the possession of any title and is not precluded from subsequently acquiring a valid title and from attempting to enforce it,' is well supported by the authorities."

Four decisions [Mosier v. Allenbaugh, 84 Kan. 361, 114 P. 226, 35 L. R. A. (N. S.) 1182; Frink v. Darst, 14 Ill. 304, 58 Am. Dec. 575; Wayland's Adm'r v. Mosely, 5 Ala. 430, 39 Am. Dec. 335] are cited, including that in Comstock v. Smith, supra.

The case in which the question was involved and the rule as to quitclaim deeds set forth in 58 A. L. R. 360, note, was applied is that of Kendrick v. Scott, 200 Ky. 202, 254 S. W. 422, 425.

It was there said: "Many authorities are cited by appellee to the effect that, if the grantor has no title or a defective title to an estate. that he assumes to convey with covenant of general warranty, and subsequently acquires the title which he purported to convey, the after-acquired title will inure to the benefit of the grantee by way of estoppel. The rule cannot be invoked in this case because the deed of Ewing A. Kendrick purported to convey only such interest as he then had in the interest conveyed by John D. Kendrick. It was in fact a quitclaim against the deed of John D. Kendrick, and nothing more."

But these three decisions do not exhaust all of the decisions of the Kentucky Court of Appeals dealing with the matter.

In the case of Perkins v. Coleman, 90 Ky. 611, 14 S. W. 640, 641, we have this recognition of the rule of nonestoppel in case of quitclaim deeds: "Where it clearly appears from the writing that the vendor has conveyed, or agrees to convey, a good and sufficient title, and not merely his present interest in the land, the agreement runs with the land, and repeats itself every day; and if the vendor, at the time of the conveyance, has not the title to the land, but subsequently acquires the title, it 'eo instante' inures to the benefit of the vendee and his privies."

In the case of Newell v. Burnside Banking Co. (Ky.) 118 S. W. 267, 268, the rule was involved and applied. It was said: "The deed does not purport to convey any other interest. The warranty only refers to the interest conveyed. It does not enlarge the operation of the granting clause. * * * Estoppels are not favored, and a deed will never be construed to operate by way of estoppel beyond the clear meaning of the words used."

Seemingly the Court of Appeals of this state is not in accord with the great weight of authority as stated in the note in 58 A. L. R., referred to above as to the necessity of warranty to work an estoppel in any case.

In the case of Altemus v. Nickell, 115 Ky. 506, 74 S. W. 221, 222, 103 Am. St. Rep. 333, it was said: "The basis of the doctrine that after-acquired title attaches for the benefit of the vendee of one who has conveyed with warranty, but without title, is the warranty. In very ancient times, before the system of passing title by bargain and sale came into use, it was upon the implied warranty. But running through the treaties on the subject, it will be observed that a warranty must have existed in fact, or be supplied as a fiction, to support the reasoning by which the passing of title by estoppel was maintained."

And in the case of Altemus v. Asher (Ky.) 74 S. W. 245, it was said: "If one sells and by deed conveys land to which he had not the title, places his vendee in possession, and thereafter acquires the title, the after-acquired title inures to his grantee in the first-named deed, provided that deed contained a covenant of warranty, general or special, or a covenant of seisin of title, but not otherwise. Hermann on Estoppel, pp. 787–789, §§ 653–655."

As against those decisions referred to holding or recognizing that in this state the rule as to quitclaim deeds is that there is no estoppel, and title afterwards acquired by the grantor therein will not inure to the benefit of the grantee, plaintiffs rely on these two decisions, to wit: Logan v. Steele's Heirs, 4 T. B. Mon. 430; Morrison's Ex'r v. Caldwell, 5 T. B. Mon. 426, 17 Am. Dec. 84. But neither decision is in point. In neither case was the deed involved a quitclaim deed. In the first case, the conveyance was of the land with special warranty. In the second seemingly it was such a conveyance with general warranty. In that case the general rule in such cases was thus stated: "It has often been held by this court, that where a person conveys and warrants, and has no title, and afterwards acquires title, this after-acquired title enures to the benefit of, and passes to his alienee."

Nor is the decision in the case of Johnson v. Johnson, supra, which is also relied on by plaintiff, in point. In that case it was held that, where the vendor of land by quitclaim deed held a title bond which required a deed to be made when the owner should become of age, the vendor could not on the owner's majority secure a deed from him to another person and set it up as against his vendee, since he had the equitable title at the time of his quitclaim deed. Here Moore, at the time he made his quitclaim deed to Boggs, did not hold the title bond of the Kentucky Union Company for the land covered by it. He did not own the equitable title thereto. He held no title whatever. Boggs not only paid Moore nothing for his claim to the four tracts covered by the deed as above pointed out, but the deed subse-

quently made by the Kentucky Union Company to Moore was not made for Boggs' benefit. Moore acquired the Kentucky Union Company's title, no doubt, to protect the interest which he had in the Reid patent not included in the deed to Boggs. Then besides these considerations against Boggs and plaintiffs, as his vendees, claiming the benefit of the deed of the Kentucky Union Company to Moore, is the fact that it is open to say that this deed to Moore was not to him individually, but as trustee for others. If there was nothing more in the deed than that it was made to Rogers T. Moore, trustee, the word "Trustee" might be treated as mere descriptio personæ. But in the habendum clause it is said that the conveyance is to Moore "as trustee," and his covenant, to which reference is about to be made, is "for himself and those for whom he may take and hold the title in trust." Certainly the subsequent acquisition by the grantor in a deed of title not individually but as trustee for others can in no case inure to the benefit of the grantee in such deed.

Then besides all this, because of the covenant just referred to, it is uncertain what the deed from the Kentucky Union Company to Moore was intended to and does convey. That covenant is "not to assert any claim of title under said patent No. 47171 above described, as against any land, either in Perry or Breathitt County, Kentucky, now owned and held by the party of the first part (i. e., Kentucky Union Company)." This uncertainty is so great that it is open to say that the deed is void.

There is, therefore, no escaping the conclusion that plaintiffs' case is not helped by this deed of the Kentucky Union Company made to Moore subsequent to Moore's deed to Boggs and Boggs' deed to plaintiff, and that plaintiffs are without any right or title to the land in controversy.

This relieves me of the necessity of passing on the defenses set up by the defendants. It cannot be said that title has been acquired by adverse possession. Sufficient time has not elapsed. It is not unlikely that the defense of champerty has been made out. The claim is without merit. The defective condition of defendants' title was ascertained by Boggs whilst he was in their employ and acting for them. He could not have availed himself of this knowledge so obtained as against them, and he would hardly have had the face to do so. Instead of attempting so to do, in some way he came across the plain-

tiffs and persuaded them to give him $100 an acre for the land. It was on top of the mountain and entirely surrounded by defendants' land. It could not be reached except over that land. By reason thereof it was practically valueless to any one but defendants. One cannot resist the conclusion that what led plaintiffs to purchase it was the big claim for damages of which it could be made the basis. They looked upon it as Tittlebat Titmouse looked upon the kick in the stern which he, on a certain occasion, received. Clapping his hands to his backsides, he exclaimed, "Good for one hundred pounds damages." The plaintiffs looked upon the purchase of this land as good for $253,000 damages.

The defendants are entitled to a dismissal of the petition at plaintiffs' costs.