## Virginia Iron, Coal & Coke Company v. Sewell.

(Decided December 6, 1916.)

### Appeal from Perry Circuit Court.

1. Boundaries—Location of Lines—Evidence—Chancellor's Finding Affirmed.—In an action in equity to recover certain mineral rights, judgment of the chancellor in locating the boundary of land claimed by plaintiff affirmed.

2. Taxation—Tax Titles—Effect of Defects or Irregularities—Evidence.—Although a deed from a sheriff conveying to the purchaser land purporting to have been sold for taxes, prima facie passes to him the title thereto and therefore places on the taxpayer the burden of showing a non-compliance with the law on the part of the sheriff in making the sale, the taxpayer may, nevertheless, in an atack upon the deed on the ground of fraud or mistake, or in defense of his right thereto against the purchaser, show the absence of the essential facts necessary to establish the validity of the sale or deed.

3. Taxation—Tax Titles—Effect of Failure to Assess.—A sale of land for a tax alleged to be due in a given year, is invalid where such land was not listed for taxation that year, either by the county assessor, sheriff or other authority possessing the power to list it.

WOOTON & MORGAN for appellant.

JOUETT & JOUETT and MILLER & WHEELER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Perry circuit court declaring appellee, the owner of the common and cannel coal on a 301-acre tract of land in Perry county, the right to the use of such timber therefrom as may be found necessary to mine and sell the coal and also the right of ingress and egress over and upon the lands for the same purpose; the rights referred to being claimed under a deed of January 3, 1858, from Samuel Stidham to Benjamin Sewell and deeds from the children and heirs at law of the latter to appellee.

Samuel Stidham, Benjamin Sewell's grantor; continued the owner of the lands, exclusive of the mineral rights which he had conveyed the latter, until his death.

Samuel Stidham left surviving him eight children, who, as heirs at law, inherited the land in question, exclusive of the mineral rights conveyed by their father to Benjamin Sewell. The interest of the above heirs at law in the land was conveyed by deed of July 21, 1887, to one T. P. Trigg, trustee, which appellee claims wrongfully attempted to convey the coal land and other mineral rights on a part thereof that Samuel Stidham on January 3, 1858, by deed, had conveyed to Benjamin Sewell. Appellant claims the land and mineral rights under the conveyance from Samuel Stidham's heirs to Trigg, trustee, and several intermediate deeds bringing the title down to it; and, also, under a deed from the sheriff of Perry county, following an alleged sale of the land for taxes. It is also the contention of appellant that the coal and other mineral rights to which it claims title under the deeds referred to, are not embraced by the deed from Samuel Stidham to Benjamin Sewell, from whose heirs appellee acquired title.

The important questions presented by the appeal for our decision are: (1) Does the judgment of the circuit court properly locate the land containing the coal and other mineral rights conveyed by Samuel Stidham to Benjamin Sewell? (2) Is the sheriff's deed to appellant a valid conveyance?

The boundary of the land containing the coal which was conveyed by the deed from Samuel Stidham to Benjamin Sewell is therein given as follows:

"Beginning at a large elm tree on the north side of the river, running up the river so as to include all the coal that belongs to said Stidham; thence crossing the river running up the river to Scalem branch; thence running up the ridge with Stidham's line to the top; thence back down around the ridge to the lower end of Stidham's farm to three beeches."

Two surveys were made of the land preparatory to the trial, one by W. H. C. Strong and the other by William Pursifull. Strong's survey was accepted by the circuit court as the correct one. It is shown by the plat marked "Map No. 1" made a part of his deposition, from which it appears that the boundary of the Benjamin Sewell deed as established by him begins at an elm at letter "A" on the map, runs thence to the letters "B," "C," "D," "E," "F," "G," and again to "A," the beginning corner. We are convinced from the record

of the correctness of the boundary of the Benjamin Sewell land as thus fixed by Strong, as the surveying was done in conformity to the boundary given in the deed from Samuel Stidham to Benjamin Sewell and by the identification of the corners and lines thereof made by William Campbell and T. W. Couch, both of whom were present when the surveying was done. These witnesses are residents of the neighborhood, and William Campbell is quite an old man who had been familiar with the boundary of the land from the time it was conveyed to Sewell by Stidham. Campbell not only identified the elm at letter "A," but also the point at "B" where the line crosses the river, and the three beeches at "G," these beeches standing just across the river from the elm and being the last objects called for in the boundary of the Sewell deed. Other witnesses, not so familiar with the lines of the Sewell deed as were Campbell and Couch, also testified to the location of the lines and corners as established by Strong. To test the accuracy of his work Strong also surveyed the lines of the land conveyed by Samuel Stidham to Jeremiah Stidham, which lies on both sides of the river and the northern line of which, called a conditional line in the deed from Samuel to Jeremiah Stidham, constitutes the southern boundary of the Benjamin Sewell land. This line of the Jeremiah Stidham tract crosses the river as does that of the Benjamin Sewell land, at letter "B," near the mouth of the Scalem branch, and from that point runs with Little Scalem branch to "C," at the top of a ridge which constitutes a corner of the Jeremiah Stidham tract. From that point on the top of the ridge, in running by the description of the boundary as given in the Sewell deed, Strong was compelled to run, as he did, the last line down the ridge on the opposite side to the beginning. Indeed, it will be recalled that the language of the deed descriptive of that part of the boundary is "thence back down around the ridge to the lower end of Stidham's farm to three beeches." According to the evidence there is no other ridge down which the surveyor could have run except that from "C" to "D," "D" to "E," "E" to "F," from "F" to the three beeches at "G," which stand across the river from the elm at "A," the beginning corner. The survey showed, however, that the boundary contained 301 acres instead of the 248 acres called for in the deed. In view of the

absence from the Benjamin Sewell deed of the courses and distances constituting the boundary of the land thereby conveyed, we are unable to see how the survey could have been more correctly made than was done by Strong.

Pursifull's survey is manifestly less accurate. In his work he did not stop at the top of the ridge at or after leaving point "C" and from there run down the ridge to the beginning, as required by the deed, but crossed the ridge and ran on down to what is known as Meeting House branch, from which he crossed another ridge to the right fork of Forked Mouth creek or branch, thence up Forked Mouth and back to the ridge, which he again crossed before reaching the three beeches. He admits that he did not have with him a copy of the deed from Samuel Stidham to Benjamin Sewell; that in the surveying done by him he did not attempt to follow the description of the boundary of the land as given in that deed; that none of the corners or lines were pointed out to him by anyone claiming to know them; that his work was done from field notes furnished him by one of appellant's attorneys, and whether they were correct or not he was unable to state. It is our conclusion that the judgment of the chancellor in locating the boundary of the land conveyed by the deed from Samuel Stidham to Benjamin Sewell and adjudging appellee the owner of the coal and other mineral rights embraced thereby, is fairly sustained by the weight of the evidence.

It is now necessary to determine whether the deed from the sheriff of Perry county to appellant, resulting from the alleged sale of the Sewell land for tax for the year 1907, is a valid conveyance. While in Moseley v. Hamilton, etc., 136 Ky. 680; Husband v. Polavick, 128 Ky. 662; James, Auditor, v. Blanton, 123 S. W. 328, we held that the provisions of the present statutes with reference to the sale of lands for taxes have been to abolish the rule which required the purchaser at a tax sale to show full compliance with the law and that a sheriff's deed conveying land that had been sold for taxes makes out for the purchaser a *prima facie* case manifesting a good title to the land conveyed, the taxpayer may, nevertheless, in an attack upon such deed for fraud or mistake, or in defense of his right to the land against the purchaser at the tax sale, show that the officer did not, in fact, comply with all the requisites of the statute.

The effect, therefore, of these decisions is to put the burden of proof upon the taxpayer and require him to prove a non-compliance upon the part of the officer with the law, but he may still show the absence of the essential facts necessary to constitute the sale a valid one. Although the deed from the sheriff purports to show that the land in question was sold for taxes due for the year 1907 and that there was no redemption of the land by the owners, as allowed by law, it was clearly established by the evidence introduced in appellee's behalf that the land was not listed for taxes for that year. This evidence was furnished by the testimony of J. D. Davis, clerk of the Perry county court, who was also clerk at the time the alleged sale of the land for the taxes was made, and was given after an examination of the assessor's books of the county and other books in his office in which such sales and reports thereof are required by law to be recorded. It goes without saying that without a listing or assessment of the land for taxation, either by the county assessor, sheriff or other officers possessing such powers, there could have been no legal sale of it for a tax thereon. In view of this state of case we are unable to say that the circuit court erred in holding the deed from the sheriff to appellant invalid.

For the reasons indicated the judgment is affirmed