J. N. Rice, Appellant, v. The Clear Spring Coal Company.

186        49
36 SC   417

186     49
1224    561

*Deed—Boundaries—Conveyance of land abutting on highway.*

Owners of land granted, bargained, released and conveyed to the trustees of a proposed railroad " so much land in width across our several and respective properties and estates as may be necessary and proper for the location and construction of said railroad of single or double track, not, however, to exceed the legal width. The release to operate only for the uses of such railroad, and to be void and of no effect should such railroad not be constructed." The railroad was subsequently constructed. By a sheriff's sale and mesne conveyances, the land of one of the grantors, including the strip conveyed to the railroad company in the description thereof, became vested in the defendant, a coal company. The plaintiff, claiming by conveyances from the heirs of the said grantor, brought an action of trespass against the defendant for mining coal under the strip occupied by the railroad. *Held*, that if the grant to the railroad was merely of a right of way the fee in the land remained in the grantor and passed under the sheriff's sale to the defendant, but if the conveyance from the grantor, followed by the location of the railroad, operated as a grant of the land to the railroad company in fee upon condition, the conveyance amounted to a fee in both surface and coal, and the heirs of the grantor were not the owners of the coal.

Argued April 12, 1898.   Appeal, No. 488, Jan. T., 1897, by plaintiff, from judgment of C. P. Luzerne Co., Dec. T., 1895, No. 302, dismissing exceptions to report of referee.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for mining coal.

The case was referred to J. D. Coons, Esq., as referee, who reported as follows :

The Clear Spring Coal Company, defendant, is owner of the coal underlying the lands on either side of a strip of land in the borough of West Pittston, Luzerne county, Pennsylvania, occupied by the Lackawanna & Bloomsburg Railroad Company with its railroad, and in the conduct and operation of its business, has driven a slope through the land so occupied by the railroad, and also mined coal therefrom.

The plaintiff, J. N. Rice, claiming the coal underlying said strip of land, for a distance of twelve hundred and five feet in

length and of the width of sixty feet, by virtue of title thereto derived through the original owner of the land occupied by the railroad company, has brought action in trespass against the defendant, and seeks to recover treble damages under the act of May 8, 1876, for the unlawful taking of the coal which defendant has mined as aforesaid.

From the evidence, the referee finds as conclusions of fact:

1. Prior to June 1, 1852, A. Y. Smith was the owner in fee simple of a tract of land situate in the township of Exeter, (now the borough of West Pittston) Luzerne county, and lying between Exeter street and the Susquehanna river. By deed of that date, he, together with Hiram Denison, G. W. Barber and W. C. Reynolds, owners of land over which the Lackawanna & Bloomsburg Railroad Company were then projecting a route "with the object in view of inducing persons to subscribe for stock in said company, and for the further consideration of one dollar to each of them in hand paid by Charles D. Shoemaker and Madison F. Myers, trustees for said proposed railroad company," granted, bargained, released and conveyed unto the trustees aforesaid, and their heirs and assigns, "so much land in width across our several and respective properties and estates as may be necessary and proper for the location and construction of said railroad of single or double track, not however to exceed the legal width. The release to operate only for the uses of such railroad, and to be void and of no effect should such railroad not be constructed."

2. The Lackawanna & Bloomsburg Railroad Company was incorporated by an act of assembly approved April 5, 1852, and after the release above noted, occupied a strip of land under the Smith conveyance sixty feet in width and twelve hundred and five feet in length, for their tracks.

3. By virtue of a writ of venditioni exponas issued out of the court of common pleas of Luzerne county, at the suit of Charles B. Drake against A. Y. Smith, bearing teste October 13, 1857, the sheriff of Luzerne county exposed the premises of said A. Y. Smith, lying on both sides of the strip of land released to the railroad company, to sale, on November 9, 1857, and sold the same in two parcels—the first thereof to R. D. Lacoe, by deed dated November 18, 1857, conveying "the right, title and interest of said A. Y. Smith in and to all that lot of land

situate in the township of Exeter, bounded and described as follows, to wit: Beginning at a stone set for a corner in the center of Exeter street, and on the southwesterly side of lands occupied by the Lackawanna & Bloomsburg Railroad Company, thence north fifty-six degrees east, thirteen hundred and thirty-two feet along lands so occupied as aforesaid to the Susquehanna river; thence down the same south twenty degrees east, seven hundred and thirty-five feet to a corner; thence south twenty-two and one half degrees east, five hundred and thirty-nine feet to a corner; thence south five and three fourths degrees east, four hundred and eighty-four feet to a corner; thence south ten degrees east, three hundred and nineteen feet to a point opposite the center of Linden street; thence south fifty-seven and one half degrees west along the center of Linden street, six hundred and eighty-three and six tenths feet to the center of said Exeter street; thence north thirty-one and one half degrees west along the center of said Exeter street, nine hundred and thirty-nine feet to the place of beginning, containing thirty-five acres of land, be the same more or less." The second parcel was sold to William C. Gildersleeve, by deed acknowledged November 25, 1857, conveying "all right, title, and interest of said A. Y. Smith, in and to that lot of land situate in the township of Exeter, Luzerne county, etc. Beginning at a corner in the center of the old Kisner road, now known as Exeter street, in line of lands of Wisner and Wood, thence along said lands north fifty-nine degrees east, eighty-seven perches to the Susquehanna river; thence down the river in a southerly direction along low water line to the line of lands occupied by the Lackawanna & Bloomsburg Railroad Company; thence along said company's railroad south fifty-six degrees west, seventy-nine perches to the center of said Exeter street, and thence north thirty-two and a half degrees west along the center of said Exeter street, fifty-two perches to the place of beginning. Containing thirty acres of land, more or less."

By virtue of sundry mesne conveyances and so-called coal leases, the coal underlying the lands thus conveyed to Lacoe and Gildersleeve is vested in the Clear Spring Coal Company, the defendant. The conveyances under which the defendant claims title to the coal were made to the Clear Spring Coal Company, Limited, a company organized in the year 1882, and the

latter's property and estate were subsequently transferred to the defendant company which was incorporated May 17, 1888.

4. A. Y. Smith died in December, 1881, intestate, and left surviving him four daughters, Mrs. Rosa Edgar, Mrs. Mary E. Traxler, Mrs. Sophia J. Harvey, Mrs. Hetty Kyte, one son, Isaac C. Smith, and one grandson, Harry S. Robinson, only child of a deceased daughter, Mrs. Nellie Robinson.

These survivors and heirs of A. Y. Smith, in the early part of the year 1886, executed letters of attorney to Dr. Olin F. Harvey empowering him " to enter into and take possession of all such messuages, lands, tenements, hereditaments and real estate whatever of which A. Y. Smith was in any way entitled or interested in his lifetime, and of which he died seized, situate in the county of Luzerne, Pennsylvania, and of which as heirs of the said A. Y. Smith, we are or may be in any way entitled or interested, and to grant, bargain and sell the same," etc. By deed dated March 8, 1886, Dr. Harvey, for himself and for his constituents above named, conveyed to Dr. J. N. Rice, the plaintiff, in consideration of the sum of $1.00 and other valuable considerations, " all the coal and other minerals in, upon, and under all that certain lot, piece or parcel of land situate in the borough of West Pittston; . . . . beginning at a point one hundred and twenty-seven feet from the center line of Exeter street and in line of land occupied by the Lackawanna & Bloomsburg Railroad, thence north fifty-six degrees east, twelve hundred and five feet more or less to the Susquehanna river, thence up said river north thirty-two and one half degrees east, sixty feet more or less to a corner, thence south fifty-six degrees west, twelve hundred and five feet more or less to a corner, thence south thirty-two and one half degrees west, sixty feet more or less to the place of beginning; containing seventy-two thousand three hundred square feet more or less; being the land occupied by the Lackawanna & Bloomsburg Railroad as a right of way between the Susquehanna river and a line one hundred and twenty-seven feet from Exeter street," etc.

5. After Dr. Rice had procured this deed, he gave verbal notice to J. L. Cake, then superintendent of the Clear Spring Coal Company, Limited, of his claim of title to the coal underlying the strip occupied by the railroad company. Subsequently, after the incorporation of the defendant company, this adverse

claim was brought to the attention of its board of directors in the winter of 1893. The defendant mined coal from under the territory in dispute between November, 1891, and November, 1895, with the knowledge of the plaintiff, who was a member of its board of directors. This coal was taken from two veins, known as the " Checker " and the " Red Ash." In addition to the coal mined, the defendant, between October, 1894, and November, 1895, put a slope through the " Red Ash " vein. The plaintiff had previously been made familiar with the state of mining on this and other properties operated by the defendant; knew the coal was being mined, and did not at any time, when the matter was brought before the directors, or otherwise, object to the mining of the coal for which suit is brought, or notify the defendant company not to mine. He talked with the president on the subject of the slope and suggested the location. The quantity of coal mined in the disputed territory by the defendant is as follows : From the Checker vein between November, 1891, and November, 1893,

Chestnut and larger sizes, 2633 tons, 17 cwt.

Pea      .      .      300  "   7  "

From the Red Ash vein between October, 1894, and November, 1895,

Chestnut and large sizes, 2,588 tons, 2 cwt.

Pea      .      .      314 tons, 15  "

The rates of royalty for the different sizes of coal paid by the defendant to the owner of the coal in land adjoining the right of way was twenty-five cents per ton for chestnut and larger sizes and twelve and a half cents per ton for pea coal. Under later leases the defendant has agreed to pay thirty-five cents and twenty cents per ton for the respective sizes.

It is contended for the plaintiff that the conveyance of June 1, 1852, from A. Y. Smith to the railroad company, followed by the location of the railroad upon the land, vested in the railroad company a fee upon condition, in the surface — that upon forfeiture the surface would revert to the grantor — that A. Y. Smith still had a fee simple title to the underlying coal — and that this title is now in the plaintiff, by virtue of the conveyance of March 8, 1886, from the heirs of Smith.

Opposed to this contention, the defendant company, owning the coal underlying all of the land of A. Y. Smith which adjoined

the railroad on either side, by title derived through the sheriff's
vendees, claims that, as the sheriff's deeds called for the land
occupied by the Lackawanna and Bloomsburg Railroad Com-
pany — a public highway — the grant carried the title to the
center line of said highway, and vests in the defendant the title
to the underlying coal.

The issue thus made presents two questions for determina-
tion : First. What is the law in reference to boundaries on
highways ?   Second. Is a railroad a highway ?

Text writers have treated of the rule of law in reference to
grants of land bounded by highways as follows :

In Angell on Highways, sec. 313, it is said " where the land,
bounding on the opposite sides of a highway belongs to the
same person, the presumption is that he owns the fee of the
entire highway ; where it belongs to different persons, the
presumption is, that each owns to the centre of the way,—ad
medium filum viæ.   Sec. 314.  The established inference of
law," says Chancellor KENT, " is that a conveyance of land
bounded on a public highway carries with it the fee to the
centre of the road as part and parcel of the grant.  The idea of
an intention in a grantor to withhold his interest in a road to
the middle of it, after parting with all his right and title to
the adjoining land is never to be presumed.  It would be con-
trary to universal practice ; and it was said in Peck v. Smith,
that there was no instance where the fee of a highway, as dis-
tinct from the adjoining land, was ever retained by the vendor.
It would require an express declaration, or something equivalent
thereto, to sustain such an inference, and it may be considered
as the general rule, that a grant of land bounded upon a high-
way or river, carries the fee in the highway or river to the centre
of it, provided the grantor at the time owned to the centre, and
there be no words or specific description to show a contrary
intent.   The soil under the highway, if it passes at all, passes
as parcel of the land and not as an appurtenant.   Therefore,
whether the soil passes or not is purely a question of intention,
to be ascertained from the description contained in the deed,
explained and illustrated by all the other parts of the conveyance,
and by the localities and subject matter to which it applies.
Sec. 315.  It may be stated as the fair conclusion from the au-
thorities, that a grant of land, described as bounded generally

'by,' or 'on,' or 'along,' a highway, carries the fee to the centre of the highway, if the grantor owned so far; and, on the other hand, where the descriptive words are 'by the side of,' 'by the margin of,' or 'by the line of,' or expressions equivalent thereto, the soil of the way is excluded."

"Sec. 318. The law with respect to public highways and to fresh-water rivers is the same, and the analogy perfect as concerns the right of soil, and the presumptions from grants of land bounded thereon. Such grants carry the grantee to the middle of the river, unless there are expressions in the terms of the grants, or something in the terms taken in connection with the situation and condition of the land granted, that clearly indicate an intention to stop at the edge or margin of the river. There must be a reservation or restriction, express or necessarily implied, which controls the operation of the general presumption, and makes the particular grant an exception."

In Elliott on Roads and Streets, p. 549, "it is said by the Supreme Court of Connecticut that there is no instance where the fee of a highway, as distinct from the adjoining land, was ever retained by the vendor. It cannot be presumed that a grantor would part with his interest in the adjoining land and yet retain the fee of the highway subject to the public easement. The general rule is, therefore, well settled that a 'grant of land bounded upon a highway or river carries the fee in the highway or river to the center of it, provided the grantor at the time owned to the center, and there be no words or specific description to show a contrary intent.' Thus a deed conveying land described therein as bounded 'by,' 'on,' 'upon,' or 'along' a highway prima facie carries the fee to the center of the highway."

In Mitchell on Real Estate and Conveyancing, it is said: "In all highways (except public rivers) the title of the owner of the land goes to the middle of the highway, and if the land be conveyed the title passes to the soil of the highway even though the description be according to the side of the street or road. This presumption of law is so strong that it requires an express reservation in the deed to overcome it."

Again, the learned author says: "I have in former chapters explained the rights of parties whose land bounds upon a public stream of water or upon a highway. They own to the middle thread of the water or to the middle of the street or road,

and a conveyance of land so bounded will carry title to the center of the stream or road although the description mentions it as being bounded by the side, unless there are express words in the deed to show that such was not the intention of the parties."

These views of the text writers appear to be the expression of the rule of construction adopted by the courts of all the states. In Pennsylvania, the leading case is Paul v. Carver, 26 Pa. 223. LEWIS, C. J., citing the extracts from KENT heretofore quoted, and referring to rulings in Connecticut, Maine, Massachusetts and elsewhere, held that " where a public street or highway is called for as a boundary or monument in a deed, it is used as an entirety to the centre of it, and to that extent the fee passes. In such cases it will require an express exception in the deed, or some clear and unequivocal declaration or certain and immemorial usage, to limit the title of the grantee to the edge of the street. And, although the measurement of the distance set forth in the conveyance brings the line only to the side of the street, this is not sufficient to control the rule of law which carries the title to the centre of it."

In Cox v. Freedley, 33 Pa. 124, the doctrine laid down in Paul v. Carver, supra, was affirmed, and has been uniformly followed as a rule in cases decided since. In Firmstone v. Spaeter, 150 Pa. 616, Mr. Justice McCOLLUM says: " Where then is the boundary line of the tract along the streets mentioned? In 2 Am. & Eng. Ency. of Law, 507, the rule on this subject is stated thus: ' Where land is bounded by a highway or street, the location of the boundary line will in the first place depend upon the character of the public right to the road or street. If the state or municipality owns the bed of the road the boundary line of the abutting land is the nearer edge of the roadway. But if the public only have a right of way over the land, not a title to the soil, then the location of the boundary line depends upon the intention of the grantor as manifested by the language of the deed, and the same rules of construction apply as are found in practical use in the case of non navigable streams. If the land is described as " bounded on," " running along " the highway and the like, the boundary line is the centre of the highway, although the dimensions of the lot would exclude the highway; and in all cases of doubt the presumption is always in favor of the boundary being the

centre of the road.' This is the rule laid down in 2 Washburn on Real Property, p. 680, and in numerous decisions of this court, among which we may mention Paul v. Carver, 26 Pa. 223, Cox v. Freedley, 33 Pa. 124 and Falls v. Reis, 74 Pa. 439. In the case last cited, AGNEW, J., delivering the opinion of the Court, said that 'where a street is called for as a boundary, the middle line of the street is always intended unless the contrary plainly appears.'" In Bliem v. Daubenspreck, 169 Pa. 282, Mr. Justice DEAN, affirming Paul v. Carver, supra, distinguishes the cases decided in Pennsylvania wherein it was held that the general rule did not apply because the highway mentioned as a boundary was imaginary—wholly on paper and not actually dedicated or existing—and says : " Whatever apparent conflict there may be in the cases, there is really none when the dissimilarity in facts indicating the intention of the grantor is noticed ; the principle adhered to in all the cases is, that the intention is controlling and that, in bounding land by a street, it will be presumed the grant is to the middle of the street, unless the contrary be manifest from other words of the grant, or the subject of it indicates plainly a different intent. Of Paul v. Carver, supra, it was said, subsequently in Cox v. Freedley, supra, 'It was maturely considered and unanimously pronounced. It was shown to be agreeable to the general principle of the common law, as laid down by Chancellor KENT, and other text writers, and as they had been applied in numerous cases in England and our own country. It was shown also to be sanctioned by the general sense and understanding of the people, and that any doubt or denial of it would introduce intolerable inconvenience, confusion and litigation.'" In Childs v. Starr, 4 Hill (N. Y.), 369, it was held that lines running to a monument standing on the bank, and thence running by the river, or along the river, etc., do not restrict the grant to the bank of the stream ; for the monuments in such cases are only referred to as giving the lines to the river, and not as restricting the boundary on the river.

The rule of construction extracted from these authorities is, that unless the grantor manifests an express or implied intention to limit the extent of the grant, there is a legal presumption in favor of the grantee. Therefore, when the boundary given in a deed has physical extent, as a road, street or other

monument having width, courts will so interpret the language of the description, in the absence of any apparent contrary intent, as to carry the fee of the land to the center line of such monument.

Applying this rule of construction to the deeds under which the company defendant holds title to the coal underlying the lands on either side of the railroad—the boundary on one side being " the southwesterly side of lands occupied by the Lackawanna & Bloomsburg Railroad Company, thence along lands so occupied "—and on the other " to the line of lands occupied by the Lackawanna & Bloomsburg Railroad Company, thence along said company's railroad,"—it seems clear that the coal under the highway passed to the defendant as parcel of the land.

It is objected by plaintiff's counsel that the railroad is not such a highway as will bring it within the rule.

Railroads are public highways, although to be used in a different manner from the ordinary road : 9 Am. & Eng. Ency. of Law, p. 365; and in Pennsylvania the question has received judicial interpretation that is as emphatic as it ought to be final. The general act of 1849, regulating railroad companies (P. L. 79) provides in section 18 — " that upon the completion of any railroad authorized as aforesaid, the same shall be a public highway for the conveyance of passengers, and the transportation of freight, subject," etc. The act " To incorporate the Lackawanna & Bloomsburg Railroad Company " approved April 5, 1852, P. L. 669, section 1, authorized the commissioners therein named to organize the company, " with all the powers and subject to all the provisions and restrictions prescribed " by the act of 1849, supra. In Sharpless v. Mayor of Philadelphia, 21 Pa. 147, BLACK, C. J., said: " A railroad is a public highway for the public benefit." In Erie and Northeast R. R. v. Casey, 26 Pa. 287, the same learned justice speaking of a railroad said (at page 307) : " Is that private property ? Certainly not ! It is a public highway, solemnly devoted by law to public use. When the lands were taken to build it on they were taken for public use; otherwise they could not have been taken at all . . . . ; the right to take tolls . . . . was a mere franchise. The state may grant to a corporation or to an individual the franchise of taking tolls on any highway opened or to be opened, whether it be a railroad or river, canal or bridge,

turnpike or common road." Upon a second hearing in the same litigation, the same justice delivering the opinion of the court said (at page 324): "It is objected that it (an act repealing the charter of the railroad company) is an act of confiscation — takes private property for the public use of the state without compensation. . . . Railroads built under the authority of law for the general purposes of commerce are public highways."

It is further contended by the plaintiff's counsel that the reasons for the principle decided in Paul v. Carver, supra, as they appear in the opinion of the court, are not applicable to a railroad—and that the advantages there enumerated become positive disadvantages in respect to lands bounding on a railroad.

Lewis, C. J., said: "If no other reason could be assigned in support of this rule of construction, the general understanding of the people and the extensive and immemorial practice of claiming and acquiescing in such rights ought to have great weight. A contrary opinion would introduce a flood of unprofitable litigation. But the rule has its origin in the nature of the grant"—and then, illustrating the immediate case under consideration — lands bounded upon a street in a city — the learned justice said: "Where land is laid out in town lots, with streets and alleys, the owner receives a full consideration for the streets and alleys in the increased value of the lots," and discusses the benefits to which the abutter is entitled, such as the right to erect houses fronting on the streets, with windows and doors,—and doorsteps and vaults extending beyond the line of the street; the right of entry into or exit from the house, and of all the enjoyments of light and air; all of which might be prohibited by the original grantor, if his right of property remained after parting with the lots.

These benefits to the abutting owner are, however, incidents attaching to land bounded on a street, and cumulative reasons merely for the application of the rule in that case. Not all of these benefits are incidental to ownership of lands abutting on a stream, ditch or river, and yet the rule of law is uniformly applied to that kind of boundary: 3 Kent's Com. 428; 6 Conn. 471.

It is true that in addition to the paramount intent of the parties, as disclosed by the conveyance, the nature of the property granted should be considered—and there are some points of dif-

ference between a railroad and other roads—but as highways they may be differentiated only in the manner of their use. The suggestion made in Paul v. Carver, supra, that "a long strip of ground fifty or one hundred feet wide and perhaps several miles in length, without any access to it except at each end, is a description of property which it is not likely either party ever contemplated as remaining in the grantor of the lots on each side," is quite as pertinent and forcible in the case of a railroad as in that of a street. And when it is remembered that the present litigation is in relation to the ownership of the coal underlying the railroad—that coal in place is land—and that to occupy the coal in the legal sense, and mine and carry it away, cannot require any of the incidents essential to occupation of the surface, except the right of ingress or egress, it would seem that the distinction sought to be drawn in the nature of the properties is not well founded.

The question under consideration, so far as counsel and referee have been able to ascertain, has never been judicially determined. The nearest analogy is in Wyoming Coal & Transportation Co. v. Price, 81 Pa. 156. Coal was conveyed to Price under separate conveyances for two pieces of land lying on each side of a canal, and the question before the court was whether the company was liable to Price for the coal under the canal. The court below charged that, "in regard to the canal, Price owned the land and the coal under the canal subject to the right of way of the canal company." This was assigned as error. In delivering the opinion of the Supreme Court, Mr. Justice MER-CUR said: "They (the errors assigned) involve the question whether the defendant in error owned the land and the coal under the canal. If the question were a new one, untrammeled by previous decisions, I should feel disposed to answer in the affirmative. If, however, the authorities have settled it otherwise, we must assent to them as the true exposition of the law," and, after reviewing the legislation leading to the construction of the canals by the state, he concludes : " It must therefore, now be declared as the settled law of this state, that whenever the commonwealth took land for permanent use under the acts in question, and constructed and operated a canal thereon, she acquired an estate in the lands so taken in perpetuity, and she may dispose of the same in fee." It is a fair inference from this

opinion that the reason why Price did not own the coal under the canal was because the statutes under which the land was taken gave the land to the state in fee and that aside from the statutory provision the general principle applicable to lands bounded on a highway would have governed. In Commonwealth v. McAllister, 2 Watts, 197, the court held that the making of public ways through a man's land does not divest him of his right to the land so appropriated, for he is still considered the owner of it, subject merely to the right of passage upon it which the public acquires by the appropriation of it to that end. The different effect as to land used by the state in the construction of a canal is predicated upon the express terms of the act of assembly authorizing such construction; and by which the state becomes the owner: 2 Am. & Eng. Ency. of Law, 507. And where canals are constructed under private charter the land reverts, upon abandonment. in the same manner as is the rule under any other form of highway which becomes abandoned: Pittsburg & Lake Erie R. R. Co. v. Bruce, 102 Pa. 23.

If the foregoing views are correct, it follows that the Clear Spring Coal Company, as owner of the coal contained in the grants from the sheriff of Luzerne county to R. D. Lacoe and W. C. Gildersleeve, is also owner of the coal underlying the railroad, and that it cannot be a trespasser in mining from its own property.

The referee, therefore, finds as his conclusions of law:

1. That the conveyance from A. Y. Smith to the Lackawanna & Bloomsburg Railroad Company was a grant of a right of way for the uses of the railroad—to be operative only after the railroad was built.

2. That the land occupied by the Lackawanna & Bloomsburg Railroad Company at the locus in quo is a public highway.

3. That as the Clear Spring Coal Company is the owner of the coal on both sides of the right of way of the railroad, its title extends on each side to the center or file of said right of way.

4. That plaintiff is not entitled to recover in this action, and judgment should be entered in favor of the defendant. The prothonotary is hereby directed, in the event of no exceptions being filed to this report, to enter judgment in favor of the

Clear Spring Coal Company, defendant, and against J. N. Rice, the plaintiff.

Exceptions to the referee's report were dismissed in an opinion by BENNETT, J., which was as follows:

We have very carefully considered the report of the learned referee in this case, and are satisfied that the plaintiff has not shown title to the land from which the defendant's alleged unlawful mining of coal took place. If the referee is correct in his conclusion that the conveyance from A. Y. Smith to the Lackawanna & Bloomsburg Railroad Company, set forth in the first conclusion of fact, was a grant of a right of way merely for the purposes of a railroad, leaving in himself the ownership in fee of the soil, we are of the opinion that the subsequent sheriff's sale and deeds in pursuance thereof on the judgment against said Smith, followed by the intermediate conveyances under which the defendant claims, as stated in the third conclusion of fact, vested in it the coal in question, under the general rule of construction applied by the referee, that a conveyance of land bounded on a public way carries with it a fee to the center of the road as part and parcel of the grant.

If, however, the conveyance from said Smith, followed by the location of the railroad, operated as a grant of the land to it in fee upon condition—a proposition well worthy of serious consideration if necessary to the disposition of this case—we are convinced that it was a fee in both surface and coal, and not confined to the surface only, as contended in behalf of the plaintiff, and in that case the latter, claiming through the heirs of A. Y. Smith, is not the owner of the coal. We are well satisfied of the correctness of the referee's general conclusion that the plaintiff is not entitled to recover.

The exceptions are overruled and judgment is directed to be entered for the defendant.

*Errors assigned* were in dismissing exceptions to report of referee.

*F. W. Wheaton*, for appellant.—While a railway company may be clothed by its charter or the general law with authority to take lands in invitum under the right of eminent domain, yet it may, if it can do so, purchase the lands necessary for its road

way, etc.: 1 Wood's Railway Law, sec. 208; Wheeling, etc., R.
R. v. Gourley, 99 Pa. 171; State v. Brown, 27 N. J. L. 13;
1 Sharswood & Budd Am. Law of Real Property, 136; Keim
v. Philadelphia, 2 Pa. C. C. 149; Ry. v. Peet, 152 Pa. 492;
Searle v. R. R., 33 Pa. 57; Reading, etc., R. R. v. Balthaser, 119
Pa. 472; Hasson v. R. R., 8 Phila. 556; Dobbins v. Brown,
12 Pa. 75.

Although the doctrine of Cox v. Freedley, 33 Pa. 134, was
that a grant would be bounded by the side of a street if the deed,
expressly or by clear implication, showed such an intent, yet the
later cases in Pennsylvania were decided rather upon the theory
that no implication or inference would prevent the grant from
going to the center of the street, and that, in the absence of an
express reservation of the street out of the grant, the grantee
would take to the center line: Hobson v. Philadelphia, 150 Pa.
595.

Terms of description may be regarded as having a technical
meaning, and as importing a grant to the middle of the street,
unless controlled by something else in the deed: Reed v.
Shenck, 3 Dev. L. 65; Chicago v. Rumsey, 87 Ill. 348; Kings
County Fire Ins. Co. v. Stevens, 87 N. Y. 287; Peabody Heights
Co. v. Sadtler, 63 Md. 533; White's Bank v. Nichols, 64 N. Y.
68; Church v. Stiles, 59 Vt. 642.

The presumption that the grant goes to the middle does not
apply in this case: 1 Wood's Railway Law, 1; Paul v. Carver,
26 Pa. 223; Robinson v. Myers, 67 Pa. 9; Spackman v. Steidel,
88 Pa. 459; Mott v. Mott, 68 N. Y. 246.

*Andrew H. McClintock* and *George R. Bedford,* for appellee.
—Railroads are highways. The Act of 1852, P. L. 669, incor-
porating the Lackawanna & Bloomsburg Railroad Company,
made the road subject to the provisions of the General Act of
1849, P. L. 79, sec. 18, and under the latter act railroads are
expressly made public highways: Sharpless v. Mayor of Phila.
21 Pa. 147; Erie, etc., R. R. v. Casey, 26 Pa. 307; Pittsburg,
etc., R. R. v. Bruce, 102 Pa. 23; Ott v. Kreiter, 110 Pa. 370.

There is no rule better settled in this state than this, that the
purchaser of land bounded by a highway takes title by implica-
tion to the center of the highway, unless there are such clear
restrictions in the grant as would confine it to the side thereof:

Paul v. Carver, 26 Pa. 223; 3 Kent's Com. 428; Cox v. Freedley, 33 Pa. 124; Lehigh Street, 81* Pa. 85; Kohler v. Kleppinger, 5 Atl. Rep. 750; Bliem v. Daubenspreck, 169 Pa. 282; Kreiter v. Bigler, 101 Pa. 94; Falls v. Reis, 74 Pa. 439; Hamilton Street, 148 Pa. 640; Baker v. Chester Gas Co., 73 Pa. 116; Elliott on Roads and Streets, 549; Trickett on Penna. Road Law, 534; Mitchell on Real Estate & Conveyances, 50; Wyoming Coal, etc., Co. v. Price, 81 Pa. 156; Com. v. McAllister, 2 Watts, 197; Pittsburg, etc., R. R. v. Bruce, 102 Pa. 23.

PER CURIAM, May 9, 1898:

We find no error in the judgment from which this appeal was taken. The learned judge of the common pleas was clearly right in dismissing exceptions to the referee's report, and in directing judgment to be entered for the defendant. For reasons briefly given in his opinion the judgment is affirmed.