Platt v. Woodland.

---

No. 26,755.

BEVERLY C. PLATT et al., *Appellants*, v. IDA F. WOODLAND and STANLEY WOODLAND et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. CONTRACTS—*Agreement for Exchange of Deeds—Evidence.* The proceedings considered, and *held,* a general finding for defendant determined in her favor a disputed question of fact relating to the nature of a family agreement for exchange of deeds. *Held further,* the finding was sustained by the evidence.

2. ESTATES—*Executory Devise—Conveyance.* A contingent executory devise may be conveyed by quitclaim deed.

3. VENDOR AND PURCHASER—*Interest Conveyed—Quitclaim Deed.* The parties to a quitclaim deed were cotenants by inheritance of a half interest in the land. The grantee was devisee of a determinable fee, and the grantors were devisees of a contingent executory devise, of the other half. *Held,* the quitclaim deed conveyed all the interest of the grantors, intent to pass a lesser interest not expressly appearing or being necessarily implied from the terms of the grant.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed June 12, 1926. Affirmed.

*Charles C. Hoge,* of Olathe, and *Caleb S. Monroe,* of Kansas City, Mo., for the appellants.

*S. D. Scott, S. T. Seaton,* both of Olathe, *E. S. McAnany, Maurice L. Alden* and *Thomas M. Van Cleve,* all of Kansas City, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one against Ida F. Woodland, who will be referred to as the defendant, for possession of land, for par-

Appeal and Error, 4 C. J. pp. 779 n. 76, 879 n. 84. Assignments, 5 C. J. pp. 854 n. 48, 858 n. 74, 859 n. 81. Compromise and Settlement, 12 C. J. p. 322 n. 1. Deeds, 18 C. J. p. 313 n. 31, 37. Descent and Distribution, 18 C. J. p. 862 n. 94. Estates, 21 C. J. pp. 927 n. 29, 992 n. 21, 1004 n. 77. Property, 32 Cyc. p. 657 n. 21. Trial, 38 Cyc. p. 1976 n. 34.

tition, and for rents and profits. The answer admitted possession of defendant, exclusion of plaintiffs from possession, and receipt and appropriation of rents and profits. The answer further denied title in plaintiffs, asserted title in defendant, and prayed that her title be quieted. Defendant recovered, and plaintiffs appeal.

Defendant was the wife of Stanley Woodland, who was joined as a defendant, but had no interest in the land except such as the marital relation conferred. Defendant's maiden name was Ida Frazier. In 1896 she married John Helm Platt. No children were born of the marriage. John Helm Platt died in December, 1914, leaving a will devising the land in controversy to his widow, who was his only heir. In 1918 she married Woodland.

John Helm Platt was the son of Mortimer R. Platt. In his lifetime Mortimer R. Platt owned land in Johnson county, and land elsewhere situated with which we are not concerned. He died on May 2, 1911, leaving a will which was executed on March 30, 1911, and was admitted to probate on May 11, 1911. The testator left five sons. The will gave to each son 160 acres of land in severalty. Four of the sons were given estates in fee simple. John Helm Platt was given 80 acres in fee, and a qualified fee in 80 acres. A tract of 160 acres was given to four sons as cotenants, and a tract of 60 acres was given to the five sons as cotenants. Although John Helm Platt had been married fifteen years when the will was executed, he had no children, as his father well knew, and the provision of the will relating to the land given him in severalty reads as follows:

"I give and devise to my son, John Helm Platt, the east half of the northwest quarter of said section thirty-three (33), containing eighty (80) acres. I also give and devise to my said son, John Helm Platt, the north half of the southeast quarter of said section thirty-three (33), containing eighty (80) acres, subject to the express condition that if the said John Helm Platt at his death shall leave surviving him no children or descendants, I give and devise said north half of said section thirty-three (33) to such of his brothers as may survive him, in equal shares."

The plaintiffs in the case are persons and representatives of persons qualified to take under the will on the death of John Helm Platt in the event he should leave no surviving children or descendants.

The testator's wife, Beverly Helm Platt, was living when the will was made and when the testator died. She was not mentioned in the will, did not consent to it, and did not elect to take under it. She

Platt v. Woodland.

died on May 7, 1911, five days after her husband's death occurred. She left no will. Her husband's five sons were her children, and her only heirs.

A few days after their mother's death, the sons rearranged the title to the lands devised to them as cotenants, by exchange of warranty deeds, one of which recited that the interest conveyed was as devisees under the will of Mortimer R. Platt, deceased, and as heirs of Beverly Helm Platt, deceased. Subsequently, the sons conferred together respecting the situation created by their mother's nonadherence to their father's will. By agreement between them, deeds were exchanged, and John Helm Platt received a deed from his brothers dated December 20, 1911, the material portions of which read as follows:

"The said parties of the first part, for and in consideration of the sum of one dollar paid and a conveyance of real estate to each of said grantors made by said John Helm Platt, the receipt whereof is hereby duly acknowledged, have sold and by these presents do grant, bargain, sell, release, and forever quitclaim unto the said party of the second part, his heirs and assigns forever, all of the following-described tract, pieces, and parcels of land situated in the county of Johnson and state of Kansas, to wit:

"All of the east half ($\frac{1}{2}$) of the northwest quarter ($\frac{1}{4}$) and the north half ($\frac{1}{2}$) of the southeast quarter ($\frac{1}{4}$) of section thirty-three (33) in township twelve (12) and range twenty-five (25), together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining; to have and to hold the said granted premises unto the said party of the second part, his heirs and assigns forever."

After the death of John Helm Platt in December, 1914, his widow continued in unmolested possession of the land until this action was commenced. The premises on which plaintiffs predicated recovery are stated in their brief as follows:

"The undivided half interest in the land in question which passed under the will of Mortimer R. Platt, Sr., vested in John Helm Platt as a base or terminable fee, with a contingent executory devise over to such of his brothers as should survive him, in equal shares.

"The contingent executory devise created by the will is not affected by the deeds exchanged during the lifetime of John Helm Platt.

"The deeds exchanged during the life of John Helm Platt, being deeds of partition, were inoperative to vest in the respective grantees any new title, but merely set off in severalty the interest which had descended to them as cotenants."

At the trial plaintiffs raised an issue of fact respecting the nature of the agreement under which the deed to John Helm Platt and the

deeds referred to in that instrument were given. Plaintiffs' evidence was that the parties intended merely to partition the interest they had taken by descent from their mother. Defendant testified the sons all said the will was not worth the paper on which it was written, and they determined to divide and deed the property, disregarding both estates so far as affected by the will. The district court resolved the conflict in the evidence by a general finding in favor of defendant. Besides that, in a memorandum opinion filed in connection with decision of the case, the trial judge stated the brothers intended to settle the whole matter among themselves, and to convey to each other every interest they had in the land. The finding and the judgment of the district court were predicated on that view. The general finding embraced every material fact and inference of fact favorable to defendant, was sustained by evidence, and is conclusive on this court.

The pretension of the will to dispose of the entire estate failed. The devisees were obliged in any event to derive title to a portion by descent. Nobody was concerned except themselves, and they were at liberty to disregard the will if they chose to do so. Plaintiffs brought into the case the subject of family agreement respecting exchange of deeds, and the court determined the nature of the agreement. It was not necessary there should be controversy or compromise to sustain the agreement. The mutual renunciation of title by purchase and division of property on the basis of title by descent, constituted consideration, and when the arrangement was consummated by exchange of deeds, all parties were bound.

The finding of the court respecting intention of the parties is not essential to validity of the judgment. Plaintiffs are bound by the quitclaim deed to John Helm Platt.

The will gave John Helm Platt a fee determinable on a stated condition, and a contingent executory devise to his brothers. An executory devise is a limitation by will of a future estate or interest in land. This description is not complete, but is correct as far as it goes. A remainder is also a future estate or interest. The doctrine of seizin made it necessary that a remainder be supported by a particular estate of freehold. Devises were good without livery, and when the statute of wills permitted land to be disposed of by will (32 Henry VIII, c. 1 [1540]), future estates in land could be created without intervention of the particular estate. The re-

sult is, all future devises which are not remainders are executory devises. (Gray, The Rule Against Perpetuities, §§ 53, 54.) Since remainders were dependent on the particular estate, they were destroyed if the particular estate were destroyed, leaving a gap in the seizin. The case of *Pells v. Brown,* 2 Cro. Jac. 590 (1620), held executory devises were not destructible on account of casualties to the precedent estate. In Jarman's opinion this is the essential characteristic distinguishing executory devises from contingent remainders. (2 Jarman on Wills, 6th Am. Ed., 1443.) Thenceforward a contingent executory devise was *"something,* even before vesting" (Kales Estates, Future Interests, 2d. ed., § 480), and occupied a relation of better security than a contingent remainder. The case of *McCartney v. Robbins,* 114 Kan. 141, 217 Pac. 311, involved mortgage of a contingent remainder. It was uncertain who would take when a man died, just as it was uncertain in this case who would take on the death of John Helm Platt. The court held the contingent remainderman had an interest in the land. By parity of reason, a contingent future interest in the form of an executory devise is an interest in land, and not a mere possibility, and there is competent authority to that effect. In the case of *Goodtitle v. Wood,* Willes' Reports, 211 (1740), the Lord Chief Justice said:

"The plaintiff's counsel then compared the case of an executory devise to a bare possibility, and insisted that a bare possibility before the contingency happened would not descend and could not be granted or devised, and that a recovery would not bar it; . . . of late years the doctrine of executory devises has been settled. They have not been considered as bare possibilities, but as certain interests and estates, and have been resembled to contingent remainders in all other respects, only they have been put under some restraints to prevent perpetuities." (pp. 212, 213.)

When executory devises first appeared, resemblance to contingent remainders caused them to be classified with such remainders with respect to alienability. The quality assigned to them continued to attach after the differences between the two forms of future interest had been judicially worked out. In *McCartney v. Robbins,* the nonalienability *inter vivos* of contingent remainders was discussed. It was held the old common law on the subject is not in force in this state, the contingent remainderman had an interest before the contingency was fulfilled, which was alienable, and the interest being fully alienable, could be mortgaged. By parity of reasoning, a future contingent interest in form of an executory devise should be

alienable, and without pursuing the subject further the court holds the contingent executory devise to the brothers of John Helm Platt was capable of conveyance by deed.

The deed to John Helm Platt was a quitclaim deed. In this state any person having authority to convey may convey "land or any other estate or interest therein" by deed (R. S. 67-205), and a quitclaim deed is a good and sufficient conveyance by quitclaim. (R. S. 67-204.) A quitclaim deed conveys nothing except what the grantor has when the conveyance becomes operative. It does not guarantee that he has anything, but whatever he has at delivery of the deed is conveyed to the grantee just as effectively as if the instrument contained full covenants of warranty:

"There is no rule that will prevent a purchaser who takes a quitclaim deed from procuring all the title which his grantor at the time possesses. A quitclaim deed is as much a conveyance as any other kind of deed, and it will convey what the grantor has just as well as any other deed." (*Utley v. Fee,* 33 Kan. 683, 691, 7 Pac. 555.)

"In this state a quitclaim deed to land will convey to the grantee all the rights, interests, title and estate of the grantor in and to the land, unless otherwise specified by the deed itself." (*Johnson v. Williams,* 37 Kan. 179, 180, 14 Pac. 537.)

One who, if he should outlive another, would be an heir, has no interest in the land of the other during the other's lifetime, which passes by conveyance. (*Knight v. Dalton,* 72 Kan. 131, 83 Pac. 124; *Mosier v. Allenbaugh,* 84 Kan. 361, 114 Pac. 226.) Contracts relating to such expectancies may be made and enforced, and may be given effect through equitable estoppel. To accomplish this result, equitable requirements must be fulfilled. The intent of the parties must be clearly ascertainable from the instrument; there must be consideration and fair dealing, etc. The contract may be made out from a quitclaim deed, and since this is so, it is sometimes said that the conveyance must describe the expectancy (or future interest) in order to transfer it. This identification of contract and conveyance tends to produce confusion. One requires the assistance of equity to make it effective; the other is a self-sufficient legal conveyance. The principle is illustrated in the case of *Clendening v. Wyatt,* 54 Kan. 523, 38 Pac. 792. In that case a quitclaim deed described the undivided portion of land to which the grantor might become entitled should he outlive his mother and should she die intestate still seized of the land. The instrument was of no effect as a conveyance, but the court said:

Platt v. Woodland.

"It is insisted that this contract is in form a quitclaim deed, under which only the present existing interest of John Clendening in his mother's estate would pass. It is true that, ordinarily, the grantee in a quitclaim deed gets nothing except what his grantor in fact owned at the time of the execution of the deed. . . . And if the contract in question was to be treated as a quitclaim deed, which did not purport to do more than to convey an existing interest, it could not be sustained. . . . He had no interest in the land at the time the contract was made. His mother was then alive, and from the face of the contract it distinctly appears that he was contracting away the undivided and future interest which he expected to acquire from his mother's estate at the time of her death. There is a specific description of the land in controversy in the contract, showing that the property now sought to be recovered was within the contemplation of the parties when the contract was made. Such a contract, based upon ample consideration, honestly and fairly made, with one who is capable to contract, may be enforced in equity." (pp. 525, 526.)

Whenever an interest in the land itself is recognized, the interest may be conveyed by deed describing the land, and it·is of no consequence whether the instrument specifically describe the interest, or contain full covenants of warranty, or be a plain quitclaim.

The grantors in the deed to John Helm Platt had an estate in the land by inheritance, as well as an interest by way of contingent executory devise. In Kale's Estates, Future Interests [2d ed., § 481], appears the following:

"If the transferor has a present, as well as a future interest in the property mentioned in the deed, it seems clear that there will be no expressed intent to convey the future interest, . . ." (p. 553.)

The statute of this state relating to conveyances reads as follows:

"Every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant." (R. S. 67-202.)

By statutory definition, the terms land and real estate include "lands, tenements and hereditaments, and all rights thereto and interests therein, equitable as well as legal." (R. S. 77-201, *Eighth.*) As indicated above, conveyances may be of land, or any other estate, or interest therein. (R. S. 67-205.) Interpreting this statute, the court said:

"The words 'conveyances of land' mean, of course, the land itself in fee simple absolute. The words 'any other estate or interest therein' include estates of freehold and less than freehold of inheritance, and not of inheritance, absolute and limited, present and future, vested and contingent, and any other kind a grantor may choose to invent, consistent, of course, with public policy." (*Miller v. Miller,* 91 Kan. 1, 4, 136 Pac. 953.)

The public policy referred to includes the rule against perpetuities. From these statutes it is clear that, so far as conveyance by deed is concerned, the distinction between estates proper and other interests in land has been obliterated, and the result is, the word estate is used in R. S. 67-202 as a general and not a technical term. It connotes whatever the grantor could convey, and the statute is to be read as though it were phrased, "Every conveyance of real estate shall pass all the interest of the grantor therein, unless the intent to pass a lesser interest shall expressly appear or be necessarily implied in the terms of the grant."

It follows from what has just been said that the deed to John Helm Platt was not a mere partition deed. It was a partition deed of the half interest held in common by inheritance, but it did not exclude, expressly or by necessary implication, the executory devise, and consequently the executory devise was conveyed.

Plaintiffs contend the decision in *McCartney v. Robbins*, 114 Kan. 141, 217 Pac. 311, related to a conveyance of a future contingent interest by an instrument containing a warranty, and should be understood as limited accordingly. Whenever a grantor gives a warranty, the warranty operates by estoppel. In the McCartney case, the court took care to decide that a contingent future interest may be conveyed by deed, and because fully alienable may be mortgaged, before mentioning the subject of warranty. The warranty in the mortgage was referred to only in connection with the subject of remedy, and was given no effect in the discussion of that subject, of the slightest consequence here.

In the case of *Simpson v. Greeley*, 8 Kan. 586 (1871), a railroad company quitclaimed land in which it had no interest. The court described the relation of the company to the land as a speculative chance, and said it was clear the company could make no legal conveyance of the land. The deed being at most a quitclaim deed, it was held the deed did not estop the grantor from asserting subsequently acquired title. In this connection the court quoted from the opinion in an early California case, what was said to be a true statement of principle:

"The general doctrine prevailing in the United States is that no estate can be passed by the ordinary terms of a deed unaccompanied with covenants of warranty which is not vested in interest at the time." (p. 597.)

The questions whether a future contingent interest in land may be conveyed by deed, and if so by quitclaim deed, were not in-

Road Supply & Metal Co. v. Casualty & Surety Co.

volved. The court did not consider those questions, did not consider the bearing of our remarkably liberal conveyancing act upon them, and did not decide them. The quotation of authority to sustain decision of the question before the court—effect of a quitclaim deed by a railroad company of Indian land not the subject of enforceable contract between the parties—cannot be regarded as a bar to independent examination of the question arising fifty-five years later, whether a contingent executory devise may be conveyed by quitclaim deed.

The judgment of the district court is affirmed.