No. 28,431.

THE RÒXANA PETROLEÙM CORPORATION, *Appellant,* v. S. D. JARVIS
et al., *Appellees.*

(273 Pac. 661.)

Opinion
filed January 12, 1929.

*W. T. McBride, John A. Potucek,* both of Wellington, *Kent Koerner,
William F. Fahey, Truman Post Young, William K. Koerner* and *M. R.
Stahl,* all of St. Louis, Mo., for the appellant.

*H. W. Hart, Glenn Porter, Enos E. Hook,* all of Wichita, *Z. I. J. Holt* and
*Fred W. Kopplin,* both of Tulsa, Okla., for cross-appellants Wilton C. Emrich,
Edna P. Emrich and Mead Brothers.

*Robert C. Foulston, George Siefkin, Lester L. Morris,* all. of Wichita, *Al-
bert Faulconer, Kirk Dale, C. L. Swarts,* all of Arkansas City, *Earl Taggart.*
and *John Bradley,* both of Wellington, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by the holder of an oil lease to
enjoin encroachment on its privileges and to quiet title to its lease-
hold interest against claimants under rival leases. The land in-
volved is a railroad right of way. The fundamental question was
whether deeds in plaintiff's chain of title were effective to convey
what for brevity and convenience is usually spoken of as the fee of
the land servient to the right of way. Plaintiff was denied relief,
and appeals.

The interests of all parties were derived from Leonard K. Scrog-
gin. In 1911 Scroggin deeded to the Wichita Midland Valley Rail-
road Company a strip of land extending through lands which he

owned in the city of Oxford, and in the southeast quarter of section 14 adjoining the city on the south. The deed recited it conveyed the strip for right-of-way purposes. The strip in its relation to numbered blocks and outlots in the city of Oxford, and to the southeast quarter of section 14, is disclosed on the accompanying map.

Before the deed was executed streets and alleys on each side of the granted right of way had been vacated from Cedar street southward. After the deed was executed, what were formerly outlots 24 and 25 and blocks 89 and 90, were designated as tract 5 in the northeast quarter of section 14 in which the city of Oxford is situated.

Scroggin died intestate in 1916, leaving a widow, children and grandchildren as his heirs. He left more than 35,000 acres of land, situated in the states of Illinois, Kansas, Minnesota, Mississippi, Nebraska, and the province of Saskatchewan. The lands were valued at more than $1,700,000. Voluntary partition was made by exchange of deeds among the heirs. Speaking generally, for purpose of the narrative, blocks 89 and 90, outlots 22, 23, 24 and 25, and the southeast quarter of section 14, except a tract of 4.56 acres in the northeast corner which Scroggin had disposed of, were conveyed to the widow, Rhoda A. Scroggin, by her coheirs. Subsequently Rhoda A. Scroggin deeded to her daughter, Edna P. Emrich, who leased to the Roxanna Petroleum Corporation. Conceiving that the fee underlying the right of way had not been conveyed to Rhoda A. Scroggin, the heirs of Scroggin other than his widow and Edna P. Emrich, representing 191/208's of the total underlying interest, made a lease to S. D. Jarvis.

The deeds to Rhoda A. Scroggin were by two groups of heirs, and each group made two deeds. One deed of each group related to the city tracts, and the other to the quarter section. The deed of Alfred C. Scroggin and his group, relating to the quarter section, recited a consideration of one dollar, division of real estate held in common, and other good and valuable considerations. The deed conveyed lands in Cloud, Sumner and Cowley counties, contained full covenants of warranty, and contained the following recital:

"The grantors [naming them] and the grantee, Rhoda A. Scroggin, being the surviving widow and sole and only heirs at law of Leonard K. Scroggin, deceased.

"This deed is one of a series of deeds made to divide a part of the real estate of which the said Leonard K. Scroggin, late of the county of Logan and state of Illinois, died seized, intestate."

The description with which we are concerned follows:

"Also, the following-described real estate situated in the county of Sumner and state of Kansas, to wit: . . . The southeast quarter of section 14, excepting 4.56 acres out of the northeast corner thereof, in township 32, south of range 2 east, less railroad right of way; . . ."

The deed was not signed by one of the named grantors, Angeline Rothwell. Her death occasioned execution of deeds by her heirs. Their deed of the quarter section was identical in statement of consideration, description of land, and warranty, with the deed of the Alfred C. Scroggin group, and contained the following:

"The grantors, Murtie Gassaway, Thomas L. Rothwell and John M. Rothwell, are the sole and only heirs at law and only devisees under the last will and testament of Angeline Rothwell, deceased, who was an heir at law of Leonard K. Scroggin, deceased.

"This deed is one of a series of deeds made to divide a part of the real estate of which the said Leonard K. Scroggin, late of the county of Logan and state of Illinois, died seized, intestate, the intention herein being to convey the interest acquired by the said Angeline Rothwell during her lifetime as heir at law of the said Leonard K. Scroggin."

The deed by the Alfred C. Scroggin group of the city lots was identical in general form with their deed of the quarter section, and the description read as follows:

"The west half of outlot 22, and all of outlot 23 and what was formerly outlot 24 and 25, and the west half of block 89 and 90 in the town of Oxford, west division, in Sumner county, Kanass, less railroad right of way over and across the same (also designated as tract 5 in the northeast quarter of section 14), . . ."

The deed by the Rothwell heirs of the city tracts was identical in form with their deed of the quarter section, and the description was the same as the description in the Alfred C. Scroggin deed of the city tracts. The expression in the deeds of the city tracts, "less railroad right of way over and across the same," referred to the right of way of the Atchison, Topeka & Santa Fe Railway Company, and not to the Midland Valley right of way.

The Scroggin right-of-way deed was expressed to be "for a right of way over and across," and it is not debatable that only an interest, which for brevity and convenience is usually called an easement, was conveyed. Therefore, the question relating to the city tracts is whether the description, "the west half of outlot 22 . . . and the west half of blocks 89 and 90," conveyed to Rhoda A. Scroggin the fee of the land subservient to the Midland right of way adjoining the tracts on the east.

If the tracts had abutted on a highway laid out over the east half of the tracts while Scroggin owned them, the fee would have been conveyed by the deed of his heirs. That question was determined in the case of *Bowers v. Atchison, T. & S. F. Rly. Co.,* 119

Kan. 202, 237 Pac. 913. In the opinion in that case the following declaration of law was made:

"The result is, the rule adopted in this state is that intent to include the highway is inferred as a matter of law, unless intent to exclude is plainly expressed." (p. 206.)

The reasons for the declaration were stated in the opinion. The question reduces, therefore, *first*, to whether the highway rule applies generally to railroad rights of way, and if so, *second*, whether the general rule applies to this right of way.

The court holds the highway rule applies to railroad rights of way. The reasons for the rule are the same in one case as in the other:

"The easement which a railroad acquires in its right of way is like that of a highway, in that it is for the use of the public. [Citations.] It is one which has attached to it the incidents of exclusive occupation and enjoyment for the public use in a peculiar degree. [Citations.] It possesses the feature of prospective permanence no less than does that of a highway. All of the considerations which have led courts generally to recognize a presumed intent to have a bound upon a highway, stream, or canal, carry to the middle line, appear to be present in the case of a bound upon a railroad right of way; . . ." (*Center Bridge Co. v. Wheeler & Howes Co.*, 86 Conn. 585, 589.)

The specific question was considered by the circuit court of appeals for the 8th circuit, in a case involving the same right of way in its relation to blocks 87 and 88 lying immediately north of the Scroggin blocks 89 and 90. The conclusion of the court is expressed in the headnote of the report of the decision:

"When owner conveys a tract of land abutting on a railroad right-of-way tract, in which such grantor owns the servient estate and the railroad the dominant estate for right-of-way purposes, his conveyance passes to his grantee such servient estate, unless the intention not to do so be clearly indicated." (*Roxana Petroleum Corporation v. Sutter*, 28 F. [2d.] 159.)

The decision was rendered on July 28, 1928. The decision was supported by decisions in railroad right-of-way cases cited in the opinion, to which may be added the case of *Rice v. Coal Co.*, 186 Pa. 49, and the decision is approved by this court.

It is contended the general rule should not apply in this case because conveyance of the west half of the blocks and outlot disclosed intention to exclude interest in the east half. It is not strictly accurate to say that the description was specifically of the west half of blocks 89 and 90. The description was of what were formerly

blocks 89 and 90, also designated as tract 5, and the old numbers were used to aid identification of land embraced in a larger consolidated tract. The precise legal question presented was dealt with in the Bowers case, *supra*. The description in the Bowers case in fact bounded the land on the highway without referring to it, and the court held the purpose to exclude the adjoining way must be disclosed by express declaration, or the equivalent of express declaration, in the instrument.

It is contended, further, the general rule should not apply in this case because the right of way is wider than rights of way usually are, and the land is usable and valuable. It is because somebody thinks the land is usable and valuable to him, or because some adventitious circumstance does make it usable and valuable, that those mischiefs are fomented which the general rule was designed to suppress. The merit of the rule lies in the fact that it conserves the social welfare by requiring a definiteness and certainty of expression of intention which involves no hardship on a grantor. The greater the value of the tract the more certain and bitter the strife, and the rule would be defeated if, as applied to the right of way shown on the map, it governed for some distance at the south, and then became of dubious authority which began to fade out toward the north, and finally vanished some distance from the quarter-section line. In the Sutter case, *supra*, the circuit court of appeals regarded this same right of way over the east half of blocks 87 and 88 as a "narrow strip." "Narrow" is a relative term and "strip" does not indicate exactitude of dimension. The law does not fix the minimum or maximum of either term, just as it does not fix width of a right of way. Lack of precision does not, however, make use of the terms undesirable. In this instance the width of the Midland Valley tract does not prevent it from properly being designated a right of way, and if in any case a right of way seems so wide to a grantor that he wants to keep his interest in the land, he can easily frame his deed according to the general rule.

The court stated the following conclusions of law applicable to the deeds of the quarter section:

"The descriptions in the several deeds, 'less railroad right of way,' are ambiguous, and testimony and other evidence to explain the meaning of the language used is admissible and to be considered in construction."

The trial had been conducted over plaintiff's objection in ac-

cordance with the view of the court stated in the conclusion of law. Extrinsic evidence was introduced which the court considered, and from the deeds and the evidence the court found the deeds effectually conveying the land on both sides of the right of way were ineffectual to convey the servient estate in the right-of-way land. If the extrinsic evidence were to be considered, this court would reach a contrary conclusion. This court holds, however, that the deeds were not ambiguous, and that if the district court believed them to be ambiguous it should have stopped the trial by judgment for plaintiff.

The deeds were signed by four sons, three daughters, three heirs of a deceased daughter, five grandsons, and four granddaughters of Scroggin, and their respective husbands and wives. The deeds told who the grantors were. They and the grantee were all the heirs of Leonard K. Scroggin, deceased. The deeds show the grantors lived in six states of the United States, and in as many as four counties of one of the states. The deeds conveyed land in three counties of this state, and the deeds explained what they were made for. The consideration was division of real estate held in common, and each deed recited it was one of a series of deeds made to divide a part of the real estate of which Scroggin died seized. The deeds left no room for doubt that the scattered Scroggin heirs, of near and remote relationship, were converting their undivided interests in his land into interests in severalty. The deeds must be interpreted in accordance with this predominant purpose, and any mere doubt which might arise should be resolved in a manner to accomplish the purpose, and not to leave it unfulfilled.

The deeds relating to the southeast quarter conveyed 1,515 acres of land by government description. Besides the right of way over and across the southeast quarter, a certain half section was described, "less railroad right of way." The notion that each one of the heirs, while seeking the benefit of division of large quantities of land, in fact had in mind the fee underlying the two rights-of-way strips, and in fact intended to keep and hold in common the relatively inconsequential estates in the strips of servient soil, seems to this court quite fanciful.

If the deeds were to be interpreted in the manner suggested, they would divide the southeast quarter into two distinct tracts separated by an unconveyed right of way strip, which would have passed had the two tracts been conveyed separately. The public policy which

dictated the rule in the Bowers case.would be contravened, and all the reasons for application of the rule in the Bowers case are present.

The deeds are to be interpreted according to the rule of interpretation prescribed by R. S. 67-202, which reads as follows:

"Every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant."

In the case of *Platt v. Woodland*, 121 Kan. 291, 246 Pac. 1017, the court said:

"The word·estate is used in R. S. 67-202 as a general and not a technical term. It connotes whatever the grantor could convey, and the statute is to be read as though it were phrased, 'Every conveyance of real estate shall pass all the interest of the grantor therein, unless the intent to pass a lesser interest shall expressly appear or be necessarily implied in the terms of the grant.'" (p. 298.)

Each deed was of the southeast quarter of section 14. The grantors had no interest in the four-acre tract in the northeast corner, could not make an effective conveyance of it if they desired, and the exception necessarily excluded that tract from operation of the grant. With respect to the remainder of the quarter section, the grantors' estate consisted of full ownership of the land on both sides of the right-of-way strip, and full ownership of the strip, diminished only by the estate of the railroad company. That estate they could not pass by conveyance any more than they could pass an interest in the four-acre tract. All their own estate did pass, unless they kept a portion of it. In order to keep a portion of their own estate it was necessary for them to do so by express exclusion. There is no basis in these transactions for necessary implication.

The words "less railroad right of way" are words of diminution. They expressly refer to the railroad company's estate; and by confining the reference to the railroad company's estate, import of the diminution is fully satisfied. The words do not make it expressly appear that besides the railroad company's estate the estate of the grantors also should not pass.

Ambiguity in a conveyance does not appear until application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. Should there be doubt in a right-of-way case about what a grantor intended to pass, the totality of his own interest would pass, by virtue of the statute prescribing method of mani-

festing intention, because the purpose of express manifestation is to leave no room for well-founded doubt.

It is contended this court has declared that the description "northeast quarter of section 19 . . . excepting the right of way of the A. T. & S. F. Railway Company," contained a latent ambiguity with respect to quantity of interest conveyed. The declaration was made, and was made in a case in which the decision depended on whether the exception divided the quarter section into two distinct tracts, separated by the strip of land used for right-of-way purposes. The opinion discloses, however, that the ambiguity arose from the fact that the phrase "right of way" might refer to complete ownership, or might refer merely to an easement. The decision was rendered in January, 1905. Cause of ambiguity on that score was removed by a decision of the court rendered in June of the same year. A railroad company took a warranty deed from Simmons of a strip of land through his farm, for right-of-way purposes. No railroad was built, and the railroad company conveyed the strip to Abercrombie. It was held Abercrombie obtained nothing by his deed.

"An instrument which is in form a general warranty deed, conveying a strip of land to a railroad company for a right of way, will not vest an absolute title in the railroad company, but the interest conveyed is limited by the use for which the land is acquired, and when that use is abandoned the property will revert to the adjoining owner." (*Abercrombie v. Simmons,* 71 Kan. 538, syl. ¶ 3, 81 Pac. 208.)

The meaning of the phrase "right of way" was thus definitely established, so far as the interest of a railway company regarding the land to which the phrase refers is concerned. The nature of the interest was discussed in the opinion in the Abercrombie case. While the term "easement" does not accurately describe the interest, the term is precise enough when the purpose is to discriminate the interest in a general way from the totality of rights, privileges, powers and immunities which constitute complete ownership. So considered the phrase "right of way" means an easement.

It is contended, however, that the decision in the Abercrombie case recognized the fact that the description was doubtful, and held the doubt might be removed by resort to extrinsic evidence. All that was said on that subject related to identification of the route of the proposed railroad through the quarter section, and had no relation to the interest of the railway company in the land when its locality was ascertained.

The deed of Rhoda A. Scroggin to her daughter, Edna P. Emrich, recited that it was made in consideration of love and affection. The city tracts were described "less railroad right of way over and across the same," which refers to the Santa Fe right of way. The description relating to the quarter section excepted the four-acre tract, and concluded as follows:

"and excepting the railroad right of way of the Wichita & Midland Valley Railroad Company over and across said southeast quarter."

In an interpretation of this deed the court is not inclined to accord special importance to the word "except" on one side, or the words "over and across" on the other. No distinction can be made between this conveyance and the conveyance of the Scroggin heirs to Rhoda A. Scroggin, without regarding the phrase "railroad right of way" as applying to the physical thing to which the railroad interest related, instead of as applying to the interest of the railroad company in the physical thing. Failure to make the distinction has occasioned much confusion. Persons and corporations come and go, but land has permanent physical existence. What the persons and corporations really have in their coming and going is interests in the land. The statute prescribing rule for interpreting conveyances gets to the heart of the matter by requiring consideration of interests. In this instance the railroad right of way of the Wichita & Midland Valley Railroad Company constituted an interest known as an easement. That interest was excepted from the grant, but the deed did not make it clearly appear, or dimly appear, that any interest of the grantor was excepted.

The result of the foregoing is that the district court's conclusion of law, which has been quoted, and other related conclusions of law, were unsound. This court holds that the deeds of the Scroggin heirs to Rhoda A. Scroggin, and the deed of Rhoda A. Scroggin to Edna P. Emrich, passed the entire interest of the grantors to the grantees. The Emrich lease to the Roxana Petroleum Corporation, if otherwise effective (a matter yet to be determined in the district court), passed all the interest of the lessors to the lessee for the purpose described.

An issue of estoppel to claim that both easement and fee in the right of way did not pass by the various deeds, was presented and tried. The court found the facts, but because of the view it took of the rights of the parties, did not regard the subject of estoppel as material. The facts found did not warrant judgment against plain-

tiff on the ground of estoppel. To show the correctness of this conclusion would too greatly extend this opinion.

The interests of some cross appellants were adversely affected by the judgment of the district court.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment and otherwise proceed in the case in accordance with the views which have been expressed.

HARVEY, J. (dissenting in part): I dissent from paragraph 1 of the syllabus as applied in the opinion to the deed for the west half of blocks 89 and 90. In my judgment this deed did not convey any interest the grantor had in the east half of those blocks.